PEOPLE *v.* RANES

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT —WARNING OF RIGHTS.

Warning given by a police officer to a defendant who was in police custody that he did not have to say anything to the officer or the men with him was not the required warning of defendant's absolute constitutional right to remain silent.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 29 Am Jur 2d, Evidence § 555 *et seq.*
[4, 5] 21 Am Jur 2d, Criminal Law § 354.

2. Criminal Law—Constitutional Law—Right to Counsel—Critical Stage of Proceedings—Psychiatric Examination—Evidence.

> Admission of psychiatrists' testimony, based on examination of defendant, received in rebuttal of insanity defense was prejudicial error and violated defendant's constitutional right to counsel at a critical stage of the proceedings where his request for counsel, made before the psychiatrists' examination began, was specifically denied and as a result of such denial he, not having been fully informed as to his constitutional rights, submitted to psychiatric examination; he had been admitted to a state hosiptal, was under diagnosis by the same psychiatrists while there; and was discharged from the hospital five months before his arrest.

### Dissenting Opinion
### Black and T. E. Brennan, JJ.

3. Criminal Law—Witnesses—Psychiatric Examination—Evidence—Right to Counsel.

> *The testimony of a psychiatrist offered in rebuttal of a defense of insanity is admissible where the psychiatrist examined the defendant without the defendant having had the opportunity to consult with an attorney prior to the examination.*

4. Criminal Law—Confession—Psychiatrists.

> *A psychiatric examination is not conducted for the purpose of obtaining a defendant's confession and a confession made to a psychiatrist would be inadmissible to prove guilt.*

5. Constitutional Law—Criminal Law—Psychiatric Examination—Medical Examination.

> *The fact that a psychiatric or any medical examination of a defendant may involve dialogue between the doctor and the prisoner is no more significant under the Fifth Amendment than the fact that serving the prisoner his meals may involve some dialogue with the jailer; the psychiatrist is not concerned with the truth of what the defendant says; he is concerned with the medical significance of what the defendant says and is not looking for admissions of fact but for perception of reality (US Const, Am 5).*

Appeal from Court of Appeals, Division 3, R. B. Burns, P. J., and Fitzgerald and T. G. Kavanagh,

JJ., affirming Kalamazoo, Raymond W. Fox, J. Submitted October 6, 1970. (No. 3 October Term 1970, Docket No. 52,189.) Resubmitted May 4, 1971. (No. 14 April Term 1971.) Decided July 7, 1971. Rehearing denied August 27, 1971. Certiorari denied by the United States Supreme Court February 22, 1972.

13 Mich App 182 reversed.

Larry Lee Ranes was convicted of first-degree murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Donald A. Burge,* Prosecuting Attorney, for the people.

*Eugene Field,* for defendant.

ADAMS, J. Larry Ranes was arrested just before midnight June 4, 1964, after telling several people he had killed schoolteacher Gary Smock. On the way to the police station, Ranes confessed to four other killings. He asked to see a priest. Shortly after arriving at the station, he met and talked alone with a priest for about an hour. Immediately thereafter, he was informed that he had a right to an attorney by Sergeant Lutz. Ranes waived this right and admitted he committed the murder. He was arraigned between 3 and 4 a.m. on June 5, 1964. He was advised by the judge of his right to an attorney and again said he did not want one. Following arraignment, his complete formal confession was recorded by a court reporter.

At 4:30 a.m., Dr. Clarence M. Schrier, Medical Superintendent of the Kalamazoo State Hospital, was called and requested to make a psychiatric examination of Ranes. Initially, Dr. Schrier asked to

have Ranes brought to him later in the morning. Shortly thereafter, he called back and said he would come to the police station to examine Ranes at 8 a.m. Dr. Schrier brought the Clinical Director of the Kalamazoo State Hospital, Dr. William Decker, with him for the diagnosis. About six months earlier, Ranes had been admitted to the hospital and Dr. Schrier had diagnosed him as a "sociopathic personality."

Just prior to the psychiatric examination at the police station, Ranes stated to an assistant prosecuting attorney, "You have mentioned something about an attorney, I think maybe I had better have one." The assistant prosecuting attorney denied his request, stating that no magistrate would be available until 9:30 a.m. to appoint an attorney. Drs. Schrier and Decker proceeded to conduct a two-hour psychiatric examination of Ranes. A petition for the appointment of an attorney for Ranes was filed just before noon on June 5, order of appointment was signed at 1:11 p.m. on that date, and appointed counsel ultimately reached and notified at 1:30 p.m. on June 6, 1964.

At the trial, Ranes' defense was not guilty by reason of insanity. Drs. Schrier and Decker testified for the prosecution that Ranes was sane. Defendant's attorney argued unsuccessfully that their testimony should not be allowed since it had been obtained in violation of defendant's Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel as set forth in *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977).

Ranes was convicted of first-degree murder. On appeal, the Court of Appeals affirmed in an opinion by Judge FITZGERALD, with whom Judge R. B. BURNS concurred. Justice T. G. KAVANAGH dissented. (13

Mich App 182.) We granted leave to appeal. (381 Mich 793.) The case was argued at the 1970 October term. Due to the presence of two new Justices on the Court, the case was ordered resubmitted. It was again argued at the 1971 April term on May 4, 1971.

Did the admission of testimony by psychiatrists, based on their examination of defendant after he had requested but before he had received legal counsel, violate his constitutional rights and constitute prejudicial error?

If *Miranda* v. *Arizona* (1966), 384 US 436, (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974) applied, defendant's request for a lawyer would terminate the state's right to interrogate him until he had a lawyer appointed to advise him. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda,* at p 474. *Miranda* is not retroactive. *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882), applied *Miranda* and *Escobedo* only to cases where the trials have commenced after the decisions were announced, June 13, 1966, and June 22, 1964, respectively. Ranes' trial began September 29, 1964. The question is whether *Escobedo* compels the same result.

*Escobedo* dealt with a confession. In that case, the opinion of the Court written by Justice Goldberg stated (pp 490, 491):

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been

denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon* v. *Wainwright* [1963], 372 US at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

In the present case, Ranes had been taken into police custody, the police carried out a process of interrogations that lent itself to eliciting incriminating statements, and the defendant requested and was denied an opportunity to consult with a lawyer.

The people contend that he was warned of his absolute constitutional right to remain silent. The testimony of Sergeant Carl W. Lutz of the Michigan State Police is as follows:

"*A.* * * * And upon entry into the holding room, Defendant Ranes was sitting there and I walked over to him, extended my hand and introduced myself as Sergeant Lutz from the Michigan State Police at Fifth District Headquarters. I then introduced him to the remaining men who were with me at this time. I said to him that I wanted to talk to him, I had been informed that he had admitted to Sergeant Duncan that he had committed the murder in the case that we were investigating, and I told him that before he did so that it was incumbent upon me to advise him to just exactly what his rights would be. I first of all told him that he needn't say a word to me unless he so desired, and I further advised him that if he did, that anything he would say to me or to the men who were with me at this particular time might and could be used against him in the event of court action. I further told him that he could be advised or be in the pres-

ence of an attorney if he so desired, and at the same time told him I thought he would need an attorney."

The warning given by Sergeant Lutz was that the defendant did not have to say anything to him or the men with him. It was not the warning of his absolute constitutional right to remain silent which is required by *Escobedo*. It is the claim of the people that the situation in this case is analogous to that in the case of *Frazier* v. *Cupp* (1969), 394 US 731 (89 S Ct 1420, 22 L Ed 2d 684) and that defendant therefore was not denied the assistance of counsel. In *Frazier*, the defendant had begun to tell his story when he stated, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." The officer replied simply, "You can't be in any more trouble than you are in now," and the questioning session proceeded. It is to be noted that in *Frazier* the questioning had begun when the request for a lawyer was made. This is stressed by the United States Supreme Court in its opinion:

" * * * it is possible that the questioning officer took petitioner's remark not as a request that the interrogation cease but merely as a passing comment. Petitioner did not pursue the matter, but continued answering questions. In this context, we cannot find the denial of the right to counsel which was found so crucial in *Escobedo*."

In the present case, Larry Ranes said: "I think maybe I had better have one." His request for counsel was made before the examination began. The request was specifically denied and we can only conclude that, as a result of such denial, Larry Ranes, not having been fully informed as to his constitutional rights, submitted to the psychiatric examination. It is stated in *Escobedo* (p 492):

"We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

Part of the totality of the circumstances of this case which cannot be ignored is the fact that Larry Ranes was admitted to the Kalamazoo State Hospital on December 24, 1963. While there, he was under diagnosis by Drs. Schrier and Decker. Dr. Decker wrote, "While in the service the taunts of barracks companions and the theft of a five-cent bag of potato chips were sufficient reasons to justify an attempt with butcher knives to remove the causal irritant, if necessary, by murder."

Larry Ranes was discharged from the Kalamazoo State Hospital on January 6, 1964. Five months later, at 4:30 a.m., Dr. Schrier received a call from the prosecutor and agreed to see Ranes. He asked that he be brought to his office. Dr. Schrier testified: "I got back in bed and suddenly it hit me as to what had happened, and I called back and stated that I would be down to the jail to visit him at 8 o'clock." Dr. Schrier brought Dr. Decker with him.

In holding that the admission of the testimony by the psychiatrists was prejudicial error and violated defendant's constitutional right to counsel under the circumstances of this case, it must be stressed that such decision is based upon the fact that defendant was refused counsel at a critical stage of the proceedings. We do not, in this case, consider when it may be appropriate for a person accused of crime to undergo examination at an insanity hearing pursuant to CL 1948, § 767.27, as amended (Stat

Ann 1954 Rev § 28.967),* or possibly in discovery
proceedings by order of the trial judge. Under the
circumstances of this case, when the defendant re-
quested counsel, we are convinced that that request
should have been honored in order that defendant
might have the benefit of his own legal counsel's ad-
vice with regard to any psychiatric examinations
he might thereafter undergo. The situation here is
much the same as when a defendant is required to
submit to a show-up but yet must be afforded
counsel to guarantee the fairness of the ensuing
proceeding.

The Court of Appeals is reversed. The conviction
is set aside and the case is remanded to the trial
court for a new trial.

T. M. Kavanagh, C. J., and Swainson and Wil-
liams, JJ., concurred with Adams, J.

T. E. Brennan, J. (*dissenting*). If we are to
pronounce a rule of law here, and not merely voice
a visceral reaction to the instant case, we ought to
state the question as abstractly as possible:

Is the testimony of a psychiatrist offered in re-
buttal of a defense of insanity inadmissible where
the psychiatrist examined the defendant without the
defendant having had the opportunity to consult
with an attorney prior to the examination?

I say the answer should be no.

---

* This section was amended by PA 1961, No 166, effective June 2,
1961. It provided in part:
"Such alleged insane person may be represented by counsel who
may appear and take part in the proceedings, cross-examine the
witnesses and produce witnesses and testimony for and on behalf
of such person."
The section was repealed by PA 1966, No 266. For the current
provisions relating to psychiatric examination, see MCLA §§ 767.27a
and 767.27b (Stat Ann 1971 Cum Supp §§ 28.966[11] and 28.966
[12]).

The psychiatric examination is not conducted for the purpose of obtaining the defendant's confession.

A confession made to a psychiatrist would be inadmissible to prove guilt.

The confession-sweating tactics which *Miranda* detailed have not been associated with medical examinations.

The doctor's testimony as to his professional opinion on the question of sanity is based upon his observation and examination of the defendant.

The fact that a psychiatric or any medical examination of a defendant may involve dialogue between the doctor and the prisoner is no more significant under the Fifth Amendment than the fact that serving the prisoner his meals may involve some dialogue with the jailer.

The psychiatrist is not concerned with the truth of what the defendant says; he is concerned with the medical significance of what the defendant says. The doctor is not looking for admissions of fact but for perception of reality.

Of what value would the advice of counsel be? Would counsel tell the defendant to refuse to be examined? Could not the doctor examine the defendant anyway? Would a lawyer advise how the questions were to be answered so as best to convey the impression of insanity? If lawyers were competent to do so, psychiatrists would be incompetent to testify.

I would affirm.

BLACK, J., concurred in the result.

T. G. KAVANAGH, J., did not sit in this case.