### UNITED STATES of America

v.

### Lester Bernard BUTLER.

### No. H–Cr–80–5.

United States District Court, E. D. Arkansas, E. D.

July 24, 1980.

---

Robert L. Neighbors, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

William R. Wilson, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

The defendant, Lester Bernard Butler, filed a Motion To Suppress certain items taken from his home on June 2, 1980 and a custodial statement made by him to authorities on June 4, 1980. A hearing on the motions was held by this Court on July 23, 1980.

The Court finds that the Motion To Suppress should be granted for the following reasons:

With respect to the items seized on June 2, 1980, the evidence shows that on that date Brinkley Chief of Police Bethell, accompanied by FBI Agent Beaureguard, went to the home of the defendant where he lived with his parents and seven brothers and sisters. The officers obtained a written "Consent to Search" from Mr. Robert Butler, Sr., the defendant's father. They were directed to the defendant's room, which he shared with his brother, Robert Butler, Jr., whereupon a search was commenced.

Agent Beaureguard began looking through the chest–of–drawers and in the

top drawer, (which bore a lock and hasp, but which apparently was not locked at that time), he discovered what appeared to him to be a torn up paper wrapper of a kind similar to that used to bind currency. A locked suitcase, identified by Mr. Butler, Sr. as belonging to the defendant, was then discovered. The testimony with regard to the eventual opening of the suitcase is in dispute: Mr. Butler stated that one of the officers took it from the closet, placed it on the bed, tried to open it but found it to be locked; that Chief Bethell tried to spring the lock with his pocket knife, and when this proved unsuccessful, he handed the knife to Mr. Butler and requested him to try to unlock it, which he did with success. According to Mr. Butler's testimony, one of the officers then unzipped the suitcase, finding some currency and clothes inside.

Chief Bethell and Agent Beaureguard testified that upon discovering that the suitcase was locked, they informed Mr. Butler that they would not open it; Chief Bethell testified that he remarked to Mr. Butler that he believed the lock could easily be opened, and handed Mr. Butler his pocket knife, whereupon Mr. Butler successfully sprang the lock and unzipped the suitcase. Agent Beaureguard testified similarly with the exception of stating that he, rather than Mr. Butler, unzipped the suitcase, finding therein the money which had earlier that day been taken during a robbery of a savings and loan.

█ It is the Court's finding that the items found inside the bureau drawer and the suitcase were seized in violation of the defendant's Fourth Amendment rights. It is well settled that consent to search effective to validate a warrantless search and seizure may, in appropriate circumstances, be given by a person other than the victim of the search. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). This third person authority may be based upon the fact that the third person shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make

it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

It is equally well settled, however, that third party consent, no matter how voluntarily given, cannot validate a warrantless search when the circumstances manifest to the contrary that the absent target of the search retains an expectation of privacy in the place or object, notwithstanding some appearance of claim of authority by the third person. *United States v. Block*, 590 F.2d 535 (4th Cir. 1978). Indeed, one of the basic issues in any case involving an alleged violation of the Fourth Amendment is whether the defendant had a reasonable expectation of privacy in the place or object searched. *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

█ In the case at hand, the evidence shows there were no exigent circumstances which would have justified a warrantless search. Further, there is evidence that the defendant had a reasonable expectation of privacy in his bureau drawer and suitcase. Consequently, the defendant's father had no lawful authority to consent to the search thereof, and the items obtained through the search must be suppressed.

Nor can it be said, as the government submits, that a "private search" occurred since Mr. Butler, Sr., rather than the officers, was the one who actually unlocked the suitcase, thus removing the search from the realm of the Fourth Amendment's application. To the contrary, the evidence reflects that the agents' searching activities were inextricably intertwined with those of Mr. Butler and that Mr. Butler was acting upon the suggestion, if not the direction, of the agents. Consequently, the search in question cannot be termed private, and the evidence must be suppressed for the reasons stated above. *United States v. Haes*, 551 F.2d 767 (8th Cir. 1977).

682

The statement given by the defendant to the police on June 4, 1980 must also be suppressed in that the evidence reflects that it was made as a direct result of the illegal search. The standard that must be applied is whether the connection between the unconstitutional police conduct and the incriminating statement was sufficiently attenuated so as to purge the latter of the primary taint of illegality. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). See, also, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In the instant case, there was evidence that the defendant knew that the items mentioned above had been seized, that prior to giving his statement he was told by one of the officers that they had all the evidence to prove the case against him, and that this was the sole reason why he made the statement. Thus, despite the fact that the defendant was properly advised of his *Miranda* rights, "this type of 'voluntariness' is merely a threshold requirement for Fourth Amendment analysis." *Dunaway v. New York, supra*, at 217, 99 S.Ct. at 2258, citing *Brown v. Illinois, supra*. The focus must be upon the causal connection between the initial illegality and the subsequent confession. Here, since there were no significant intervening events between the two, the admission of the defendant's statement as a part of the government's case in chief "would allow law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the procedural safeguards of the Fifth." *Dunaway v. New York, supra*, at 219, 99 S.Ct. at 2259.

The above mentioned items which were seized on June 2, 1980 and the statement made by the defendant on June 4, 1980 are hereby suppressed, in accordance with the Order entered this date.