**Natividad SANTIAGO ORTIZ, Petitioner,**

v.

**Walter R. KELLY, et al., Respondents.**

**No. 88–CV–15 (JBW).**

United States District Court, E.D. New York.

June 30, 1988.

Natividad Santiago Ortiz, Attica Correctional Facility, Attica, N.Y., pro se.

Patrick Henry, Dist. Atty. of Suffolk County by Glenn Green, Asst. Dist. Atty., Riverhead, N.Y., for respondents.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Petitioner was convicted in Suffolk County Court in 1983, following a jury trial, of murder in the second degree. He was sentenced to twenty-five years to life, and is presently incarcerated. He now seeks relief on the grounds that (1) his confession was involuntary because it was obtained by means of deception, and (2) his conviction was obtained through use of evidence siezed during an illegal arrest. 28 U.S.C. § 2254.

### I. *Facts*

The victim was found stabbed in the face and near death. Police obtained a description of petitioner from a friend of the victim who had seen the two struggling moments before the stabbing occurred, and who reported that petitioner was the last person the victim was with prior to the crime. Less than two hours later, the police found petitioner near where he lived, with blood on his hands and face. On the floor next to his bed they found the yellow shirt he was reported to have been wearing at the time of the murder. It was covered with blood. He was immediately taken into custody.

According to testimony credited by the state court at a *Huntley* hearing, petitioner was immediately read his rights in Spanish. He responded that he did not want or need an attorney, and proceeded to tell the detectives that the victim had been stabbed by a gang of youths in a skirmish while he was with her. The detectives then told petitioner that the victim was alive and would be able to identify him, although they in fact knew that she had died. They

also truthfully told him about the witness who had identified him as the last person who had been seen with the victim, and pointed out inconsistencies in his story. At that point, petitioner asked if he would be able to get probation, since he had cut his sister-in-law about the face when he was living in Puerto Rico and had then received six months probation. The detective informed him that he would tell the District Attorney that he was cooperating, but could not make any guarantees or promises.

Petitioner then told the police that the victim had angered him, in response to which he pulled out a knife and stabbed her at least two times. He further stated that at that moment he wanted to kill the victim, and that "she made me feel like a jerk and I cut her." Petitioner's rights were explained to him once more, after which he signed his written confession.

## II. *Law*

Petitioner argues that his confession should have been excluded as involuntary because the police affirmatively misrepresented to him that the victim was alive. The "voluntariness" and thus admissibility of a confession depends upon the "totality of the circumstances" surrounding it. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). If deception in the course of an interrogation is designed to produce pressure for a statement from a suspect as a "favor" to the police, or to avoid some harm to the suspect or a relative of the suspect, it would tend to be characterized as involuntary. *See Spano v. New York,* 360 U.S. 315, 795 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (police officer told suspect that the policeman might lose his job unless suspect confessed); *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (suspect told that aid for her children might be lost unless she confessed).

The fact, however, that the police lie to a suspect to elicit his confession does not necessarily render it involuntary. See also *Green v. Scully,* 850 F.2d 894 (2d Cir.1988) (Police trickery must be evaluated under the totality of the circumstances test, which requires a court to consider "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials."); *United States ex rel. Galloway v. Fogg,* 403 F.Supp. 248, 252 (S.D.N.Y.1975) (collecting cases on trickery as bearing on voluntariness); 3 *Wigmore on Evidence* § 841 (Chadbourn Rev.1970) (same). *See also A.L.I. Model Code of Pre-Arraignment Procedure,* commentary, 176, 178–81 (1966). The Supreme Court has specifically declined to outlaw all trickery, or even to reach the question of whether an affirmative misrepresentation by law enforcement officials as to the scope and seriousness of an interrogation is sufficient to render a confession involuntary. *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 858 n. 8, 93 L.Ed.2d 954 (1987). In *Colorado v. Spring,* the police were silent about a killing which was the subject of their investigation, leading the suspect to believe that the only crime under investigation was a firearms violation. The Court held that the confession was voluntary, but noted that the question of whether it would have been voluntary had the police affirmatively misrepresented the subject of the investigation was not before them. *Id. See generally* White, Police Trickery in Inducing Confessions, 127 Penn.L.Rev. 581 (1979) (criticizing lack of per se rules governing trickery).

The Court's reluctance to clearly define coercion or to declare all forms of trickery illegal is understandable. Any concept of "voluntariness" in a constitutional sense, as opposed to a psychological or theological sense, is necessarily artificial. The constitutional definition must maintain a strong pragmatic dimension because all interrogation is to some extent coercive. At the same time, it must place some limits on the police to prevent abuse of police powers.

Respondent relies upon *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), in which the Court held that an affirmative misrepresentation by police as to the amount of incriminating evidence garnered against the accused did not in itself vitiate a waiver of Fifth Amendment rights. 394 U.S. at 739, 89 S.Ct. at 1425 (suspect falsely told that his companion had confessed). The significance of *Frazier* as

approving affirmative misrepresentations is, however, diminished by the fact that it was decided without considering the effect of *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an opinion highly critical of the use of deceptiveness and trickery by law enforcement officials to obtain confessions. *Frazier,* 394 U.S. at 738, 89 S.Ct. at 1424; *Miranda,* 384 U.S. at 448–56, 476, 86 S.Ct. at 1614–18, 1629.

Also unpersuasive is respondent's argument that the police tactics used to elicit petitioner's confession were permissible because they were not calculated to produce *untrue* statements. Some courts have permitted deception so long as it is deemed likely to elicit the truth. *See, e.g., In the Matter of D.A.S.,* 391 A.2d 255 (D.C.1978), cited in R. Uviller, *The Processes of Criminal Justice: Investigation and Adjudication* 553 (1979) (confession not involuntary although suspect had been falsely told during interrogation that incriminating fingerprints had been found and that victim had identified him); *Moore v. Hopper,* 389 F.Supp. 931 (M.D.Ga.1974) (confession not involuntary although police falsely told petitioner that murder weapon had been recovered); *Moore v. State,* 199 S.E.2d 243 (Ga.1973) (same). This reasoning runs contrary to established Supreme Court precedent, which accords the guilty the same protection as the innocent against coerced confessions. In *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), the Court held that the reliability of a confession could not be used to support a finding of voluntariness. The *Rogers* test requires inquiry only into whether the confession was "freely" given. The Court wrote that the relevant question in determining voluntariness is

> whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth.

365 U.S. at 544, 81 S.Ct. at 741. *See generally* White, *supra,* at 593–96 (tracing the history of the reliability interest as an aspect of the voluntariness test).

### III. *Application of Law to Facts*

■ Under any reasonably workable definition of voluntariness, the totality of the circumstances in the case at bar indicates that petitioner's confession was voluntary. Petitioner was an adult of sound mind. He was not found to be under the influence of any intoxicating substance at the time he rendered his confession. No threats or promises were made. All of his basic needs were provided for during his detention and interrogation. He was not a neophyte; he had previously been in police custody for a similar offense.

Whether the victim lived or died, the petitioner realized that he was guilty of a serious crime, and he should have known that his prior record was likely to lead to a heavy penalty. It is true that if the victim had lived, (1) the crime would have been less serious, and (2) she would have been available as a witness. Neither of these two circumstances, however, was sufficient to "bring about" a confession "not freely self-determined" by "overbearing" petitioner's "will to resist."

Courts have on similar facts found confessions to be voluntary based on the "totality of the circumstances" test despite affirmative police deception regarding the victim's death. *People v. Groleau,* 44 Ill. App.3d 807, 3 Ill.Dec. 507, 358 N.E.2d 1192 (1976); *State v. Cooper,* 217 N.W.2d 589 (Iowa 1974). *See generally* W.E. Ringel, *Searches & Siezures Arrests and Confessions* 25–27 (2d Ed.1986) (telling a suspect falsehoods regarding the status of the case against him is "widely accepted" by courts).

■ Petitioner's additional claim that his arrest was illegal, and that the evidence siezed in conjunction with it was therefore inadmissible, has no merit. The police had probable cause for the arrest. The fact that a reliable eyewitness had identified him, and that he was caught red-handed immediately after the killing provided ample justification for taking petitioner into custody.

### Conclusion

The petition to set aside the judgement of conviction is denied. A certificate of

probable cause is granted because of the ambiguity of the law dealing with voluntariness and police trickery.

So ordered.