**UNITED STATES of America,**

v.

**Rodrigo LOPEZ, Defendant.**

**No. S 90 Cr. 197 (RO).**

United States District Court,
S.D. New York.

Dec. 4, 1990.

---

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for U.S.; Mark E. Matthews, Avraham C. Moskowitz, of counsel.

Axelrod & Warburgh, New York City, for defendant; Paul E. Warburgh, Jr., of counsel.

## OPINION AND ORDER

OWEN, District Judge:

Defendant Rodrigo Lopez moves to suppress evidence observed by law enforcement officials during a warrantless search of defendant's home that was conducted in the presence of defendant's wife after she signed a "consent to search" form. Defendant also seeks to suppress all evidence obtained during a later search conducted pursuant to a warrant that was obtained based on evidence viewed during the initial, warrantless search. A hearing was held on this issue.

Defendant was arrested on drug-money-laundering charges on March 11, 1990, at a public swimming pool across the street from his home in Miramar, Florida. At the time, defendant was wearing only a bathing suit. United States Customs agents took him back to his home, but defendant refused to enter it, and he also refused to let the agents enter it. Defendant's wife, Victoria Lopez, was present while defendant was making it clear that he did not want the agents to enter his home, and she gave him some clothing out the front door of the house. She did not accompany her husband to the station house.

Customs agents returned to the Lopez home without a warrant approximately three hours later, while defendant was still in custody. According to Special Agent Devaney, whose testimony I credit, the agents returned to the home in part to inform Mrs. Lopez about the reason for her husband's arrest, and in part to obtain her consent to search their home. Mrs. Lopez acknowledged in her testimony that she voluntarily let United States Customs Agents Devaney and Wright into her home, and all three sat on the couch in her living room and talked.

Agents Devaney and Wright both testified that, when asked to consent to a search of her home for drugs, money, weapons and financial records, Mrs. Lopez voluntarily consented to such a search, knowing they did not have a warrant and also aware that absent a warrant she could refuse to consent to the search. Devaney and Wright each stated that when Devaney asked Mrs. Lopez for her consent, she first asked how others in the same situation behave, and Devaney responded that he could not answer that question. The agents further testified that Devaney informed Mrs. Lopez that if she did not consent, he would apply for a warrant to search the home. Devaney acknowledged at some point in his testimony before me that at that time he did not believe that the government had sufficient probable cause to obtain such a warrant. Mrs. Lopez then orally consented to a search of her home, after which she signed a written consent form that was read aloud to her.[1] That

---

1. Agent Devaney's full testimony on direct examination regarding this sequence of events is as follows:

form indicated that Mrs. Lopez was aware that she had a right not to consent to the search, but that she knowingly and voluntarily relinquished that right. I do not credit any testimony of Mrs. Lopez to the contrary.

Defendant now claims that his wife's consent was not truly voluntary since she believed the agents could obtain a search warrant if she did not consent.

After Mrs. Lopez signed the consent form, Agents Devaney and Wright, along with approximately 5 other agents, began their search in the Lopez's bedroom. During this search, Agent Devaney observed incriminating items in defendant's briefcase, which was open on a dresser. The briefcase contained a copy of a criminal complaint from the Eastern District of New York, airline travel documents, wire transfers, beepers and a cellular phone. Defendant claims that: 1) the briefcase was in a closet, and closed, and 2) since it was his alone, his wife's consent could not have extended to it.

In any event, while Devaney was viewing the contents of the briefcase, defendant telephoned the home and when he learned that she had consented to a search of the home, he told her to tell the agents to leave. She did so, and the search stopped. Mrs. Lopez left the house to bring her husband some clothing, and Agent Devaney went to apply for a search warrant based upon the evidence that he had observed in the Lopez home, as well as other information that had been amassed in the investigation that had led to defendant's arrest. Devaney received a warrant later that evening and a search of the home revealed a small arsenal, rounds of ammunition, a triple beam scale, a small amount of cocaine, a cellular telephone, numerous bank records and faxes, a portable fax machine, three beepers and $25,000 in cash under the floor.

On this record, I conclude that the government has met its burden of proving that Mrs. Lopez's consent to search was voluntary and uncoerced. As an initial matter, I find Mrs. Lopez's willingness to allow Agents Devaney and Wright into her living room relevant. Only three hours earlier, she had watched her husband go to great lengths to prevent the agents from entering the home. Therefore, she knew two things: first, that it was her right to prevent the agents from entering her home and, second, that for whatever reason her husband did not want those agents in the home.

Furthermore, and equally relevant, I find that once Mrs. Lopez let the agents into her living room to talk, she nonetheless knew that she could refuse to consent to a search, having been so informed by Agent Devaney and having signed a consent form that was read aloud to her. In addition, she knew that she could consult the attorney that just three hours earlier she had contacted to assist her husband.

I further find that, under all of the circumstances, Mrs. Lopez was not misled in any way by any representation made by Agent Devaney. It is my impression from listening to Mrs. Lopez's testimony and observing her demeanor on the witness stand that Mrs. Lopez would have consent-

Q.: What happened next?
A.: I asked Mrs. Lopez for her permission to search her residence for any narcotics, U.S. currency, financial records or any firearms.
Q.: And what if anything did Mrs. Lopez say to you when you asked her for consent to search the house?
A.: *She asked me what do other people do in* similar situations and I advised her that I really could not give her an answer. She asked if she could call an attorney and I said "you could—please make any telephone calls you wish, and"—
Q.: What did Mrs. Lopez say if anything when you told her she could feel free to call an attorney?

A.: At that point she said she really didn't feel the need to call an attorney and she gave us verbal permission to search her residence.
Q.: Prior to getting verbal consent to search from Mrs. Lopez did you have any further conversations with her about whether she would or would not give you a consent to search?
A.: Yes. I advised Mrs. Lopez that if she did not give consent to search that I would take the necessary steps to apply for a search warrant, to go through the United States Attorney's office and, subsequently, to a U.S. magistrate in the hopes of obtaining a search warrant.

ed to the search regardless of Agent Devaney's comment about applying for a warrant. Moreover, under the law of this Circuit, a statement of intent to get a warrant does not, in itself, vitiate consent. *United States v. Vasquez,* 638 F.2d 507 (2d Cir. 1980), *cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981); *United States v. Faruolo,* 506 F.2d 490 (2d Cir.1973). Under these circumstances, I conclude that Agent Devaney did not represent his ability to obtain a warrant in such a way that Mrs. Lopez could only have concluded that the warrant was a fait accompli. Agent Devaney did not tell Mrs. Lopez that the warrant would issue if she refused her consent, and she acknowledged in her testimony that she was aware that Agent Devaney would have to appear before a judge to obtain a warrant.[2]

Finally, I conclude that when Mrs. Lopez asked Agent Devaney what would happen if she did not consent to the search, Devaney had no affirmative obligation to tell Mrs. Lopez that he did not believe he had sufficient probable cause to obtain such a warrant, *see United States v. Curiale,* 414 F.2d 744, 747 (2d Cir.), *cert. denied,* 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969).[3] Therefore, under the "totality of the circumstances," *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973), I find that Mrs. Lopez's consent was voluntarily given with the knowledge that such consent could be withheld. *Cf. Green v. Scully,* 850 F.2d 894 (2d Cir.), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); *Santiago Ortiz v. Kelly,* 687 F.Supp. 64 (E.D.N.Y. 1988); *United States ex rel. Galloway v. Fogg,* 403 F.Supp. 248 (S.D.N.Y.1975). The facts here are within the triangular area

described in *United States v. Vasquez,* 638 F.2d 507, 529 (2d Cir.1980), as:

> [B]ounded by *Bumper v. North Carolina,* [391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)], in which there could be no consent because the agents represented that they had a warrant, *United States v. Faruolo,* [506 F.2d 490 (2d Cir. 1974)], in which the officers had a well-founded belief that they would obtain a warrant, and the hypothetical situation in *United States v. Curiale,* in which the defendant held the mistaken belief that a warrant would issue while the agents *knew* there was not probable cause.

With respect to the briefcase, I conclude that it was in the bedroom and was open when Agent Devaney came upon it. Mrs. Lopez's testimony during the suppression hearing varied in a significant way from the affidavits submitted by her and her husband in support of the motion. Although Mrs. Lopez testified before me that she got her husband's briefcase out of the closet when the search began—a fact which, if true, would tend to support her claim that Devaney asked for, rather than stumbled upon, the briefcase—neither affidavit recited that the briefcase was in the closet prior to the search, although that detail—if true—ought to have been perceived as highly material to defendant's position. Rather, both affidavits described the briefcase simply as being in the "bedroom."[4] During her testimony, Mrs. Lopez claimed that she told defendant's attorney that the briefcase was in the closet, but that he for some reason did not include that fact in the affidavits that he drafted and she did not call the omission to his attention. I find this discrepancy to cast

---

**2.** Her testimony that she did not want the agents to come back later, after she picked up her small child from a neighbor's, may be true but in any event is not, in this situation, a coercive force that the law recognizes.

**3.** Indeed, in an analogous context, deliberate police trickery has been held not to vitiate the voluntariness of a confession. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (suspect falsely told that his companion had confessed).

**4.** Defendant's affidavit stated: "Further, I was the sole owner of a closed briefcase which I kept in my bedroom in the aforementioned premises." Mrs. Lopez's affidavit similarly stated: "After I signed the consent to search form, Agent Devaney went into the bedroom and looked into my husband's briefcase. Agent Devaney specifically asked to see the briefcase. My husband's briefcase is his alone. I never use his briefcase. I have never opened his briefcase."

further doubt upon Mrs. Lopez's account of the search.

Accordingly, I need not reach the issue of whether Mrs. Lopez "possessed common authority over or sufficient relationship to the premises or effects sought to be inspected," *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), since I conclude that all of the briefcase's contents, except for one wire transfer, were in "plain view," *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and the items Devaney was able to see were a sufficient basis for obtaining the warrant.

Accordingly, defendant's motion to suppress is denied in all respects. So ordered.