FRAZIER *v.* CUPP, WARDEN.

No. 643.   Argued February 26, 1969.—Decided April 22, 1969.

*Howard M. Feuerstein* argued the cause for petitioner. With him on the brief was *R. A. Nahstoll.*

*Arlen Specter* argued the cause for respondent. On the brief were *Robert Y. Thornton,* Attorney General of Oregon, and *David H. Blunt*, Assistant Attorney General.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Petitioner was convicted in an Oregon state court of second-degree murder in connection with the September 22, 1964, slaying of one Russell Anton Marleau. After the Supreme Court of Oregon had affirmed his conviction, 245 Ore. 4, 418 P. 2d 841 (1966), petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Oregon. The District Court granted the writ, but the Court of Appeals for the Ninth Circuit reversed, 388 F. 2d 777 (1968). We

granted certiorari to consider three contentions of error raised by petitioner. 393 U. S. 821 (1968). Although petitioner's case has been ably briefed and argued by appointed counsel, we find none of these allegations sufficient to warrant reversal.

## I.

Petitioner's first argument centers on certain allegedly prejudicial remarks made during the prosecutor's opening statement. Petitioner had been indicted jointly with his cousin, Jerry Lee Rawls, who pleaded guilty to the same offense. Prior to petitioner's trial, petitioner's defense counsel told the prosecutor that Rawls would invoke his privilege against self-incrimination if he were called to the stand; defense counsel warned the prosecutor not to rely in his opening statement upon Rawls' expected testimony. The prosecutor replied that he would act on the basis of "all of the information I have concerning [Rawls'] testimony." Before trial, he consulted with a police officer who had spoken to Rawls and with Rawls' probation officer; each indicated his belief that Rawls would testify. Similar information came, through a sheriff's report, from some of Rawls' close relatives. Because of these reports, the prosecutor concluded that Rawls would testify if asked to do so. The court below felt that the prosecutor also relied on the fact that Rawls had pleaded guilty and was awaiting sentence. This would give him reason, the court felt, to cooperate with the prosecutor.

In any case, after the trial began the prosecutor included in his opening statement a summary of the testimony he expected to receive from Rawls. The summary was not emphasized in any particular way; it took only a few minutes to recite and was sandwiched between a summary of petitioner's own confession and a description of the circumstantial evidence the State would introduce.

At one point the prosecutor referred to a paper he was holding in his hands to refresh his memory about something Rawls had said. Although the State admitted in argument here that the jury might fairly have believed that the prosecutor was referring to Rawls' statement, he did not explicitly tell the jury that this paper was Rawls' confession, nor did he purport to read directly from it. A motion for a mistrial was made at the close of the opening statement, but it was denied. Later, the prosecutor called Rawls to the stand. Rawls informed the court that he intended to assert his privilege against self-incrimination in regard to every question concerning his activities on the morning of September 22, 1964. The matter was not further pursued, and Rawls was dismissed from the stand. His appearance could not have lasted more than two or three minutes. The motion for mistrial was renewed and once again denied.

Petitioner argues that this series of events placed the substance of Rawls' statement before the jury in a way that "may well have been the equivalent in the jury's mind of testimony," *Douglas* v. *Alabama,* 380 U. S. 415, 419 (1965), and that, as in *Bruton* v. *United States,* 391 U. S. 123, 128 (1968), the statement "added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination . . . ." In this way, petitioner claims he was denied his constitutional right of confrontation, guaranteed by the Sixth and Fourteenth Amendments to the Constitution. See *Pointer* v. *Texas,* 380 U. S. 400 (1965). Although the judge did caution the jurors that they "must not regard any statement made by counsel in your presence during the proceedings concerning the facts of this case as evidence," petitioner contends that *Bruton* v. *United States, supra,* disposes of the contention that limiting instructions of this sort can be relied upon to cure the error which occurred. Although the question thus posed is not an

easy one, we cannot agree with petitioner's conclusion.

First of all, it is clear that this case is quite different from either *Douglas* or *Bruton*. In *Douglas*, the prosecutor called the defendant's coconspirator to the stand and read his alleged confession to him; the coconspirator was required to assert his privilege against self-incrimination repeatedly as the prosecutor asked him to confirm or deny each statement. The Court found that this procedure placed powerfully incriminating evidence before the jury in a manner which effectively denied the right of cross-examination. Here, Rawls was on the stand for a very short time and only a paraphrase of the statement was placed before the jury. This was done not during the trial, while the person making the statement was on the stand, but in an opening statement. In addition, the jury was told that the opening statement should not be considered as evidence. Certainly the impact of the procedure used here was much less damaging than was the case in *Douglas*. And unlike the situation in *Bruton*, the jury was not being asked to perform the mental gymnastics of considering an incriminating statement against only one of two defendants in a joint trial. Moreover, unlike the situation in either *Douglas* or *Bruton*, Rawls' statement was not a vitally important part of the prosecution's case.

We believe that in these circumstances the limiting instructions given were sufficient to protect petitioner's constitutional rights.* As the Court said in *Bruton*, 391 U. S., at 135, "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." See *Hopt* v. *Utah*, 120

---

*A more specific limiting instruction might have been desirable, but none was requested.

U. S. 430, 438 (1887). It may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. Even if it is unreasonable to assume that a jury can disregard a coconspirator's statement when introduced against one of two joint defendants, it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately." *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 239 (1940).

The Court of Appeals seemed to feel that this aspect of the case turned on whether or not the prosecutor acted "in a good faith expectation that Rawls would testify." 388 F. 2d, at 780–781. While we do not believe that the prosecutor's good faith, or lack of it, is controlling in determining whether a defendant has been deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments, we agree with the Court of Appeals' factual determination in this case. The evidence presented in the record is sufficient to support the Oregon Supreme Court's conclusion that "the state could reasonably expect [Rawls] to testify in line with his

previous statements." 245 Ore., at 9, 418 P. 2d, at 843.
Accordingly, there is no need to decide whether the type
of prosecutorial misconduct alleged to have occurred
would have been sufficient to constitute reversible con-
stitutional error. Cf. *Miller* v. *Pate,* 386 U. S. 1 (1967).
Therefore, because we find neither prosecutorial miscon-
duct nor a deprivation of the right of confrontation,
we agree with the Court of Appeals that nothing which
occurred during the prosecution's opening statement
would warrant federal habeas relief.

## II.

Petitioner's second argument concerns the admission
into evidence of his own confession. The circumstances
under which the confession was obtained can be sum-
marized briefly. Petitioner was arrested about 4:15
p. m. on September 24, 1964. He was taken to head-
quarters where questioning began at about 5 p. m. The
interrogation, which was tape-recorded, ended slightly
more than an hour later, and by 6:45 p. m. petitioner
had signed a written version of his confession.

After the questioning had begun and after a few
routine facts were ascertained, petitioner was questioned
briefly about the location of his Marine uniform. He
was next asked where he was on the night in question.
Although he admitted that he was with his cousin Rawls,
he denied being with any third person. Then peti-
tioner was given a somewhat abbreviated description
of his constitutional rights. He was told that he could
have an attorney if he wanted one and that anything
he said could be used against him at trial. Questioning
thereafter became somewhat more vigorous, but peti-
tioner continued to deny being with anyone but Rawls.
At this point, the officer questioning petitioner told him,
falsely, that Rawls had been brought in and that he had
confessed. Petitioner still was reluctant to talk, but

after the officer sympathetically suggested that the victim had started a fight by making homosexual advances, petitioner began to spill out his story. Shortly after he began he again showed signs of reluctance and said, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." The officer replied simply, "You can't be in any more trouble than you are in now," and the questioning session proceeded. A full confession was obtained and, after further warnings, a written version was signed.

Since petitioner was tried after this Court's decision in *Escobedo* v. *Illinois,* 378 U. S. 478 (1964), but before the decision in *Miranda* v. *Arizona,* 384 U. S. 436 (1966), only the rule of the former case is directly applicable. *Johnson* v. *New Jersey,* 384 U. S. 719 (1966). Petitioner argues that his statement about getting a lawyer was sufficient to bring *Escobedo* into play and that the police should immediately have stopped the questioning and obtained counsel for him. We might agree were *Miranda* applicable to this case, for in *Miranda* this Court held that "[i]f . . . [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U. S., at 444–445. But *Miranda* does not apply to this case. This Court in *Johnson* v. *New Jersey* pointedly rejected the contention that the specific commands of *Miranda* should apply to all post-*Escobedo* cases. The Court recognized "[t]he disagreements among other courts concerning the implications of *Escobedo*," *Johnson* v. *New Jersey, supra,* at 734, and concluded that the States, although free to apply *Miranda* to post-*Escobedo* cases, *id.,* at 733, were not required to do so. The Oregon Supreme Court, in affirming petitioner's conviction, concluded that the confession was properly introduced into evidence. Under *Johnson,* we would be

free to disagree with this conclusion only if we felt compelled to do so by the specific holding of *Escobedo*.

We do not believe that *Escobedo* covers this case. Petitioner's statement about seeing an attorney was neither as clear nor as unambiguous as the request Escobedo made. The police in *Escobedo* were unmistakably informed of their suspect's wishes; in fact Escobedo's attorney was present and repeatedly requested permission to see his client. Here, on the other hand, it is possible that the questioning officer took petitioner's remark not as a request that the interrogation cease but merely as a passing comment. Petitioner did not pursue the matter, but continued answering questions. In this context, we cannot find the denial of the right to counsel which was found so crucial in *Escobedo*.

Petitioner also presses the alternative argument that his confession was involuntary and that it should have been excluded for that reason. The trial judge, after an evidentiary hearing during which the tape recording was played, could not agree with this contention, and our reading of the record does not lead us to a contrary conclusion. Before petitioner made any incriminating statements, he received partial warnings of his constitutional rights; this is, of course, a circumstance quite relevant to a finding of voluntariness. *Davis* v. *North Carolina,* 384 U. S. 737, 740–741 (1966). The questioning was of short duration, and petitioner was a mature individual of normal intelligence. The fact that the police misrepresented the statements that Rawls had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible. These cases must be decided by viewing the "totality of the circumstances," see, *e. g., Clewis* v. *Texas,* 386 U. S. 707, 708 (1967), and on the facts of this case we can find no error in the admission of petitioner's confession.

## III.

Petitioner's final contention can be dismissed rather quickly. He argues that the trial judge erred in permitting some clothing seized from petitioner's duffel bag to be introduced into evidence. This duffel bag was being used jointly by petitioner and his cousin Rawls and it had been left in Rawls' home. The police, while arresting Rawls, asked him if they could have his clothing. They were directed to the duffel bag and both Rawls and his mother consented to its search. During this search, the officers came upon petitioner's clothing and it was seized as well. Since Rawls was a joint user of the bag, he clearly had authority to consent to its search. The officers therefore found evidence against petitioner while in the course of an otherwise lawful search. Under this Court's past decisions, they were clearly permitted to seize it. *Harris* v. *United States,* 390 U. S. 234 (1968) ; *Warden* v. *Hayden,* 387 U. S. 294 (1967). Petitioner argues that Rawls only had actual permission to use one compartment of the bag and that he had no authority to consent to a search of the other compartments. We will not, however, engage in such metaphysical subtleties in judging the efficacy of Rawls' consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside. We find no valid search and seizure claim in this case.

Because we find none of petitioner's contentions meritorious, we affirm the judgment of the Court of Appeals.

*Affirmed.*

MR. CHIEF JUSTICE WARREN and MR. JUSTICE DOUGLAS concur in the result.

MR. JUSTICE FORTAS took no part in the consideration or decision of this case.