## UNITED STATES of America

v.

## Edward August OCKEL V. and William Joseph McMurtrey, Jr.

### No. 75–192CR(3).

United States District Court,
E. D. Missouri, E. D.

Dec. 29, 1975.

Donald J. Stohr, U. S. Atty., Richard E. Coughlin, Asst. U. S. Atty., for U. S.

Wm. R. Dorsey, Dorsey & Dorsey, Clayton, Mo., for Edward August Ockel V.

Norman S. London, St. Louis, Mo., for William Joseph McMurtrey, Jr.

---

### MEMORANDUM AND ORDER

WANGELIN, District Judge.

This matter is before the Court for a decision on the merits. This case was tried to the Court sitting without a jury on August 19, 1975, after the defendants had waived their right to trial by jury.

The Court being fully advised of the premises hereby makes the following findings of fact and conclusions of law.

#### Findings of Fact

1. On approximately May 18, 1975, the defendants, who had known each other for a period of time, went to the home of Robert Hanke, Edward Ockel's brother-in-law, and requested permission

to rent a building on Mr. Hanke's land for storage purposes. That request was later related to defendant Ockel's father, Edward August Ockel, Sr., by Mr. Hanke's wife.

2. Mr. Ockel, Sr. called the Drug Enforcement Administration on May 19, 1975. On that date agents of the Drug Enforcement Administration went to the Hanke farm and searched the building at Mr. Ockel, Sr.'s request and with Mr. Hanke's permission.

3. A few days after the building on Mr. Hanke's property was searched, Mr. Ockel, Sr. noticed that a certain shed attached to the farmhouse on his farm, which had never been locked before, had a padlock on it.

4. Mr. Ockel, Sr. opened the shed by removing the screws which held the hasp to the door. Mr. Ockel, Sr. found in the shed two large green plastic garbage bags, which contained a vegetable substance. Mr. Ockel, Sr. took a small sample of the vegetable matter and gave it to Special Agent Randall Oitker. The sample of vegetable matter was later analyzed by Mr. Joseph Bono, a chemist for the St. Louis County Police Department, who determined that it was marijuana.

5. A few days later Mr. Ockel, Sr. then noted that the lock on the shed had been removed, and that the shed remained open for a period of weeks.

6. On approximately June 17, 1975, Mr. Ockel, Sr. was again on the premises near the shed when he noticed that the lock had been placed on the shed again. As he had previously, Mr. Ockel, Sr. removed the hasp from the door, entered the shed, and found 14 to 15 large bales within the building. At that time he called Special Agent James McDowell of the Drug Enforcement Administration and made arrangements to meet with him the following day.

7. On approximately June 18, 1975, Special Agent McDowell, following the instructions given to him by Mr. Ockel, Sr., went to the Ockel farm and viewed the shed Mr. Ockel, Sr. had described. Mr. Ockel, Sr. removed the lock and the gentlemen found that 10 bales remained. Special Agent McDowell and Mr. Ockel, Sr. then determined an area of the farm from which the shed could be observed.

8. Within the next two hours, several federal agents arrived in the vicinity of the farm. At approximately 6:00 P.M., a 1975 gold Duster arrived on the premises driven by defendant McMurtrey. The car was driven by Mr. McMurtrey through a cattle gate and on to the main entranceway to the house area where the shed was located. After a short distance, Mr. McMurtrey turned the car around and left.

9. Approximately 20 minutes later, a 1973 Cadillac approached with defendants McMurtrey and Edward August Ockel V in it. The two defendants drove to the main house, got out of the car and went inside.

10. Defendants Ockel and McMurtrey were seen, after approximately another 20 minutes, at the carport where the shed was located and were seen to place 3 bales into the Cadillac.

11. After the defendants had placed the 3 bales in the Cadillac, and as they approached the agents, they were both arrested.

12. Three bales of what was later determined to be marijuana were removed from the trunk of the car, and seven bales of marijuana were removed from the shed using the keys found in the pocket of defendant McMurtrey. The defendants were also in the possession of $36,000.00 in cash.

### Conclusions of Law

The chief issue in law facing the Court in the present case at bar is whether or not Mr. Ockel, Sr. could give a valid consent for the purposes of searching the shed on his farm property.

The facts adduced at trial do not clearly indicate whether or not Mr. Ockel, Sr. had given up his residence at the house on his farm. However, the evidence clearly indicates that he had not given up his rights to access to the shed near the house on the property. Mr.

Ockel, Sr. kept various tools, and lawn and garden equipment, in the shed, which he used to maintain the lawn around the house and for other work on the farm. Neither Mr. Ockel, Sr. or Mrs. Ockel had rented the property to their son, defendant Ockel.

The rule of law regarding consent to searches has been stated by the Supreme Court to be:

. . . that [the] permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises . . . to be inspected. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).

It is the opinion of the Court that since Mr. Ockel, Sr. had never given his son, defendant Ockel, permission to use the shed for any type of storage, the defendants have no standing to object to Mr. Ockel, Sr.'s consenting to a search of the area. Mr. Ockel, Sr. clearly had the "common authority" required by the Supreme Court in *Matlock*, supra, for the granting of a valid consent to a search. 415 U.S. at 171 n. 7, 94 S.Ct. 988; *United States v. Heisman*, 503 F.2d 1284, 1289 (8th Cir., 1974). Since the defendants had no permission to use the shed for storage, they must assume the risk that others that used the area would consent to it being searched. *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1968); *Drummond v. United States*, 350 F.2d 983 (8th Cir., 1965); *United States v. Martinez*, 450 F.2d 864 (8th Cir., 1971).

It being established that there was a valid consent by Mr. Ockel, Sr. to the shed where the marijuana was stored, it follows that the evidence resulting from the search is admissible.

■ After consideration of the evidence adduced, it is the opinion of the Court sitting as the trier of fact and the trier of law that the government has established all the necessary elements of a conspiracy between the defendants and all the elements of the two remaining substantive charges. *United States v. Tramunti*, 513 F.2d 1087 (2nd Cir., 1975).

After careful consideration, the Court finds the defendants, William Joseph McMurtrey, Jr. and Edward August Ockel V, guilty beyond a reasonable doubt as to all charges contained in the three counts of the indictment.