**Jeffrey Alan GEARNS, Petitioner–Appellant,**

v.

**Mary BERGHUIS, Respondent–Appellee.**

No. 03–1002.

United States Court of Appeals, Sixth Circuit.

July 13, 2004.

Domnick J. Sorise, Clinton Township, MI, Mark J. Kriger, Detroit, MI, for Petitioner–Appellant.

Thomas M. Chambers, Office of the Prosecuting Attorney, Detroit, MI, Brenda E. Turner, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before: GILMAN and ROGERS, Circuit Judges; and FORESTER, District Judge.*

ROGERS, Circuit Judge.

In this appeal from the denial of a writ of habeas corpus, the question presented is whether a defendant suffers a violation of his Confrontation Clause and Due Process Clause rights when a prosecutor elicits from a government witness, in the presence of the jury, an assertion of the Fifth Amendment privilege. Because the witness asserted the privilege in response to a foundational question, and the assertion did not create an inference establishing an element of the state's case, we affirm the judgment of the district court.

Gearns was convicted by a state jury of second degree murder and of using a firearm in the perpetration of a felony. The facts of the underlying offenses are set forth in detail in the Supreme Court of Michigan's opinion, *People v. Gearns*, 457 Mich. 170, 577 N.W.2d 422, 425–26 (1998)(*"Gearns I"*), and need not be restated here. At trial, the prosecution intended to introduce evidence that Gearns's brother, Gregory, had assisted Gearns in disposing of the victim's body and cleaning up the remaining evidence of the crime. Prior to trial, prosecutors had negotiated an agreement with Gregory that, if he agreed to testify against his brother, he would be immune from a charge of accessory after the fact to murder.

At trial, however, Gregory's attorney indicated to the court that Gregory would refuse to testify unless the prosecution agreed to grant him immunity as well from being charged for the underlying murder. Although the trial court warned Gregory and his attorney that it would hold Gregory in contempt if he refused to testify, Gregory's attorney insisted that Gregory would assert the Fifth Amendment privilege unless he received immunity for the homicide. The trial court stated that it did not believe the witness's Fifth Amendment privilege to be valid and that it intended to hold Gregory in contempt if he refused to answer questions. Despite Gregory's assurances that he would assert the privilege, the trial court nonetheless permitted the prosecution to call him, and the following colloquy ensued:

[PROSECUTING ATTORNEY]: Sir, tell us your name and address.

[GREGORY GEARNS]: Gregory John Gearns

[PROSECUTING ATTORNEY]: Address?

[GREGORY]: 20606 Brooklawn

[PROSECUTING ATTORNEY]: Is that in Dearborn Height [sic]?

[GREGORY]: Yes.

[PROSECUTING ATTORNEY]: Is that a single family home?

[GREGORY]: Yes.

[THE PEOPLE]: Who do you reside at that address with?

[GREGORY'S ATTORNEY]: May I approach the witness? I believe it is encumbent upon me.

THE COURT: Sure, come around to the back.

[PROSECUTING ATTORNEY]: Okay[,] who do you live with at that address?

---

* The Honorable Karl S. Forester, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

[GREGORY]: I'd like to take the fifth on that.

[PROSECUTING ATTORNEY]: Okay, you have been served with an order of immunity[,] is that correct?

[GREGORY'S ATTORNEY]: I have to object based on People versus Palma (Pho).

THE COURT: It is not necessary, overruled.

[PROSECUTING ATTORNEY]: Were you served an order of immunity granting you immunity [sic], is that correct?

[GREGORY]: Yes.

[PROSECUTING ATTORNEY]: Judge, I ask the court to instruct the witness he has no valid fifth amendment priviledges [sic] he must answer the question.

THE COURT: You are instructed by this court to answer the question. Who do you live with at the Brooklawn address?

[GREGORY'S ATTORNEY]: For the record[,] I believe it's valid[,] the Fifth Amendment. It's your ruling that he be litigated based on your statement to answer the question?

THE COURT: That's correct.

[PROSECUTING ATTORNEY]: Okay[,] I ask the court to hold the witness in contempt of court.

[DEFENSE COUNSEL]: I ask that the cause be dismissed based on Dryer and Palma (Pho).

The trial court then excused the jury and heard further argument from counsel. After giving Gregory an additional opportunity to answer the question, the trial court held him in contempt.

Gearns appealed his conviction to the Michigan Supreme Court arguing, *inter alia,* that Gregory's assertion of the Fifth Amendment privilege in the presence of the jury violated Gearns's rights under the Confrontation Clause and the Due Process Clause, because the assertion gave rise "to the jury's logical inference that if the witness is guilty, immunity would protect him, but because he will not testify, he must know what happened and be protecting his guilty brother." *Gearns v. Berghuis,* No. 01–CV–73667–DT, op. at 8 (E.D.Mich. Dec. 9, 2002) (*"Gearns II"*)(internal quotation marks and citations omitted). The Michigan Supreme Court concluded that Gregory had not actually given any testimony that triggered Gearns's confrontation rights. *Gearns I,* 577 N.W.2d at 430.[1] Although the district court did not adopt fully the Michigan Supreme Court's reasoning, it concluded nonetheless that the state court's decision was not contrary to, nor an unreasonable application of, clearly established Federal law. *Gearns II,* op. at 22.

The district court based its rejection of Gearns's argument on two grounds. First, the district court concluded that "the factual basis for an inference that Gregory Gearns was aware of his brother's role in Lineberry's shooting and/or may have been available to assist in the removal and disposal of Lineberry's body was established by competent evidence, not merely by Gregory's invocation of the Fifth Amendment in front of the jury." *Id.* at 20. Second, the district court reasoned that the prosecution established adequate circumstantial evidence to support an inference that Gearns was involved in Lineberry's death. Therefore, according to the district court, Gregory's assertion of the Fifth Amendment privilege "did not create or support an inference that added critical weight to the prosecution's case in a form

---

**1.** *Gearns I* was overruled on other grounds by *People v. Lukity,* 460 Mich. 484, 596 N.W.2d 607, 612 (Mich.1999).

not subject to cross-examination." *Id.* at 21–22.

The district court further compared Gearns's trial to the facts involved in *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), and *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). As in *Namet,* the district court reasoned, Gregory's appearance on the witness stand was " 'no more than [a] minor lapse[ ] through a long trial' " and Gregory's assertion of the privilege was not the primary source of an inference against Gearns. *Gearns II,* op. at 22 (citing *Namet,* 373 U.S. at 187). Ultimately, the district court found unpersuasive Gearns's assertion that "the prosecution 'invited' the jury to make inculpatory inferences about [Gearns] from Gregory Gearns's refusal to testify." *Id.* at 23.

Similarly, we conclude that, because Gearns suffered no constitutional injury when Gregory refused to testify, the Michigan Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established Federal law. The denial of the writ of habeas corpus was therefore proper. *See* 28 U.S.C. § 2254(d)(1). In order to establish a constitutional violation, Gearns must show that the prosecution used the witness's assertion of the Fifth Amendment privilege to create an inference that established a critical element of the state's case. *See Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In the instant case, any inference that the jury may have made from Gregory's refusal to testify not only would have been insufficient to establish a critical element of the state's case, but also would have been merely cumulative of the adequate evidence the state adduced to establish its case.

Gregory's appearance on the witness stand was very brief and his refusal to testify was addressed to a foundational question—his home address. Under the circumstances in which Gregory asserted the privilege, the only reasonable inference a juror could have drawn would have been that Gregory was generally refusing to testify. In this respect, this case is little different from *Frazier,* in which the Supreme Court concluded that the witness's refusal to testify did not violate the defendant's Confrontation Clause rights. In *Frazier,* the prosecutor summarized the uncooperative witness's expected testimony in his opening statement, and then the witness asserted the Fifth Amendment privilege without answering a single question. Although Frazier maintained that the witness's refusal to testify and assertion of the privilege before the jury validated in a prejudicial manner the prosecutor's version of the witness's testimony, the Court nonetheless reasoned that the relative brevity of the witness's appearance on the stand cut against any concerns that the jury would make a prejudicial inference against the defendant. *See id.* at 735. Similarly, in this case, although a juror might have inferred from Gregory's general refusal to testify that he may have been involved, in some respect, in the criminal activity at issue, such an inference would hardly be strong enough to establish a critical link in the prosecution's case.

Moreover, it remains true that the prosecution presented sufficient evidence to support a conviction even without any improper inferences from Gregory's testimony. Gearns argues as if this hypothetical inference the jury may have reached made the prosecution's case, ignoring the significant quantity of admissible evidence against him. The prosecution placed Gearns and Lineberry drinking together at Chi–Chi's. J.A. at 119–20. The police recovered a matchbook with Gearns's phone number on it from Lineberry's pocket. J.A. at 65–66. The prosecution placed Lineberry's car in Gearns's driveway. J.A. at 75. Gearns's friend Gary

Edwards testified that Gearns called him for a referral to a good criminal attorney because someone had been shot. J.A. at 110–11. Finally, Gearns's was actively cleaning and disinfecting his house when the police arrived to execute the search warrant. J.A. at 227. In light of the considerable circumstantial evidence the prosecution presented, it is unlikely that the jury needed to draw any conclusion from Gregory's assertion of the privilege in order to find guilt beyond a reasonable doubt.

Because Gregory's refusal to testify in the presence of the jury did not create an inference that established a critical link in the prosecution's case, we agree that the judgment of the Michigan Supreme Court was not contrary to, nor an unreasonable application of, clearly established Federal law. Therefore, the judgment of the district court is AFFIRMED.