**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-4920**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SHAWN ARNETTE BREEDEN,

Defendant - Appellant.

---

**No. 04-4925**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL ANTHONY CARPENTER,

Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of Virginia, at Charlottesville. Samuel G. Wilson, District Judge. (CR-03-13)

---

Submitted: August 31, 2005         Decided: September 23, 2005

---

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

---

Janice L. Redinger, JANICE L. REDINGER, P.L.C., Charlottesville, Virginia; J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Charlottesville, Virginia, for Appellants. John L. Brownlee, United States Attorney, William F. Gould, Assistant United States Attorney, Charlottesville, Virginia; Thomas E. Booth, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Shawn A. Breeden and Michael A. Carpenter appeal their conviction for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (2000), travel in interstate commerce to commit a crime of violence to further an unlawful activity in violation of 18 U.S.C. § 1952(a)(2) (2000), travel in interstate commerce with intent to kill in violation of 18 U.S.C. § 2261A (2000), and three counts of use of a firearm during each of the three above offenses in violation of 18 U.S.C. § 924(c)(1) (2000). Finding no error, we affirm.

Breeden, Carpenter, Kevin Cassell, and Robert Outterbridge lived near one another in Washington, D.C., where they sold drugs. On August 8, 2002, Breeden lost some of his girlfriend Shelley Holland's money while gambling and promised her he would get the money by robbing Kevin Hester, a drug supplier from Charlottesville, Virginia. Breeden, Carpenter, Cassell, and Outterbridge drove to Charlottesville and met with a friend of Breeden's who gave Cassell some crack cocaine to give to Breeden. While looking for Hester, the four men robbed a man of his money and cell phone and assaulted and robbed two people at a bank.

Breeden arranged to meet with Hester to purchase drugs. When Hester arrived, Breeden greeted Hester as Carpenter approached Hester from behind. Carpenter pointed his shotgun at Hester and, as Hester grabbed the barrel of the gun, Carpenter shot Hester in

the leg.  Breeden then took his knife and stabbed Hester multiple times in the neck and chest.  Hester fell to the ground and Carpenter and Breeden told Outterbridge to shoot Hester again.  Outterbridge shot Hester twice in the head.  One of the men took Hester's phone and the four men then drove back to Washington, D.C.  Hester died from his injuries.

Breeden and Carpenter claim that the district court erred in denying their motion for a judgment of acquittal.  We review the district court's decision to deny a motion for judgment of acquittal de novo.  United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001).  If the motion was based on insufficiency of the evidence, the verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.  Glasser v. United States, 315 U.S. 60, 80 (1942).

Breeden and Carpenter claim the Government did not have sufficient evidence to prove that the Defendants were involved in a conspiracy to possess cocaine with intent to distribute on the night of Hester's death because they only intended to rob drug dealers.  To prove the charged conspiracy, the Government had to establish (1) an agreement to possess cocaine with intent to distribute between two or more persons, (2) the Defendant knew of the conspiracy, and (3) the Defendant knowingly and voluntarily became part of that conspiracy.  21 U.S.C. § 841; United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996).  "Participation in a

criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" Glasser, 315 U.S. at 80. The government may rely on the existence of a "tacit or mutual understanding," between the defendant and his conspirators, the length of their association, the defendant's conduct, and the nature of the alleged conspiracy as circumstantial evidence of the conspiracy. United States v. Ellis, 121 F.3d 908, 922 (4th Cir. 1997); Burgos, 94 F.3d at 858.

While Outterbridge testified that there was no agreement to possess or distribute drugs, he also testified that he expected to get "money and drugs" from robbing the drug dealers. While in Charlottesville, Cassell received crack cocaine from one of Breeden's associates. Breeden told Hester to bring cocaine to their meeting, and the conspirators intended to rob Hester of his possessions including the cocaine. While there was no direct evidence of an agreement between the men to steal drugs, the Government presented sufficient circumstantial evidence to prove a tacit understanding between the men to take drugs from the drug dealers they intended to rob, and district court did not err in denying Breeden and Carpenter's motion for judgment of acquittal on the drug conspiracy count.

Breeden and Carpenter claim that the Government did not sufficiently prove that they traveled in interstate commerce "with

intent to commit any crime of violence to further any unlawful activity." See United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir. 1986). The Government was only required to prove that Breeden and Carpenter intended to commit "any crime of violence," not a crime of violence against a specific person. Cassell, Outterbridge, and Holland all testified that the four men decided while in Washington, D.C., to travel to Charlottesville to rob drug dealers for money. The Government presented sufficient evidence to prove that they entered into interstate travel to commit a crime of violence.

Breeden and Carpenter also claim that the Government did not prove their intent to rob drug dealers was to further an unlawful activity. For purposes of § 1952, "unlawful activity includes any 'business enterprise' involving narcotics or controlled substances." 18 U.S.C. § 1952(b)(1) (2000). This court has construed "business enterprise" to mean a continuous course of conduct rather than a sporadic casual involvement in the proscribed activity. United States v. Corbin, 662 F.2d 1066, 1073 n.16 (4th Cir. 1981). Breeden and Carpenter had a history of drug dealing and not a sporadic or casual involvement. The Government presented sufficient evidence that Breeden and Carpenter intended to rob drug dealers for money and drugs and that the robbery showed a pattern of continuous drug dealing sufficient to constitute a business enterprise.

Breeden and Carpenter claim the Government did not provide sufficient evidence to prove they traveled in interstate commerce "with the intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury to, that person." 18 U.S.C. § 2261A. Breeden and Carpenter claim the government did not present any evidence that they intended to harm Hester before they left Washington, D.C.; rather, they claim the Government only proved that they were going to rob drug dealers. Holland testified that Breeden told her that he was going to rob Hester and that she begged him not to rob Hester. Cassell testified that Breeden wanted to go to Charlottesville to get money from Hester. Outterbridge testified that after Carpenter talked with Breeden, Carpenter told Outterbridge they were going on a "mission."[1] Breeden then told Outterbridge they were going "to Virginia to rob some people." Breeden armed himself with a knife and Carpenter took a shotgun before leaving Washington, D.C. The Government presented sufficient evidence that before they left Washington, D.C., Breeden and Carpenter intended to intimidate, harass, and injure Hester by robbing him.

---

[1]Breeden and Carpenter's argument that Cassell, Outterbridge, and Holland gave conflicting or inconsistent testimony on various matters is meritless. In evaluating the sufficiency of the evidence, we do not "review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

Breeden and Carpenter also claim that they did not put Hester into reasonable fear of death or serious bodily injury. Hester saw Carpenter's shotgun and had enough time to grab the barrel. Hester may not have known for long that he was in danger, but his efforts to grab the barrel of a shotgun pointed directly at him demonstrate that he had a reasonable fear of death or serious bodily injury sufficient to satisfy the requirement of 18 U.S.C. § 2261A. See United States v. Wills, 346 F.3d 476, 499 (4th Cir. 2003). The Government presented probative evidence that Breeden and Carpenter entered into interstate travel to harm Hester, and the district court did not err in denying Breeden and Carpenter's motion for judgment of acquittal.

Breeden claims that he was entitled to a hearing under Kastigar v. United States, 406 U.S. 441 (1972), to determine whether the Government made derivative use of his statement to federal investigators. Whether a defendant's statement was voluntary is a question of law that is reviewed de novo. Arizona v. Fulminante, 499 U.S. 279, 287 (1991). Breeden agreed to speak to federal investigators about the robberies he committed prior to Hester's death in an attempt to persuade the Government to not recommend the death penalty. The Government agreed not to use the statement against him as direct evidence, but reserved the right to make derivative use of it. A Kastigar hearing to determine if the government made derivative use of a statement is

required where the government has violated evidentiary privileges, but when no such violations occur a hearing is unnecessary. See United States v. Squillacote, 221 F.3d 542, 549-560 (4th Cir. 2000); United States v. McHan, 101 F.3d 1027, 1035 (4th Cir. 1996).

Breeden claims his proffer was involuntary because it was based on a misunderstanding by his counsel, but a confession that is a result of factors unrelated to government misconduct is not involuntary within the meaning of the Due Process Clause. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Breeden's statements were not used against him as direct evidence. The proffer agreement gave the Government the right to use that statement derivatively. As the Government was permitted to use the statements derivatively and the Government did not violate the proffer agreement or any evidentiary privileges, no Kastigar hearing was required because it was not necessary to determine if the Government could use the statements derivatively. The district court did not err when it denied Breeden a Kastigar hearing.

Carpenter claims violations of his Fifth Amendment and Due Process Clause rights because his pretrial confession was involuntary. We review the voluntariness of a confession de novo. Fulminante, 499 at 287. Carpenter waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and initially denied any role in the murder. In order to induce Carpenter to confess, the agents misrepresented the strength of their case against Carpenter

by saying that one of the robbery victims was a government informant, that they had surveillance video of Carpenter at a gas station, and that Breeden and Outterbridge had implicated Carpenter in Hester's killing.

The agents also told Carpenter that they would subpoena members of his family to appear before the federal grand jury, his family would have to pay their own expenses, and if they failed to appear or committed perjury they would be sent to jail. Carpenter continued to deny any role in the murder. Finally, the agents told Carpenter that Cassell had confessed, and they gave Carpenter specific details of the offense that only someone who had witnessed the murder could know. Carpenter thereupon admitted that he and Breeden had killed Hester.

At trial, the Government did not introduce Carpenter's statement into evidence and Carpenter did not testify. In Chavez v. Martinez, 538 U.S. 760, 767 (2003), the plurality of the Supreme Court held that "[s]tatements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." The Martinez plurality found that the mere use of compulsive questioning, without more, did not violate the Fifth Amendment. Martinez, 538 U.S. at 767. Carpenter did not suffer a violation of his Fifth

Amendment rights because the Government did not introduce his statement into evidence.

Carpenter also claims the Government violated his Due Process Clause rights by coercing his confession. "The test for determining whether a statement is voluntary under the Due Process Clause 'is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997). The mere existence of coercive police activity does not render a confession involuntary. The police officers' conduct must be such that the defendant's will is "'overborne' or his 'capacity for self-determination is critically impaired.'" Id. at 780. "[C]ourts must consider 'the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.'" Id. at 781.

While law enforcement officers' deception is relevant in determining the voluntariness of a confession, it is not determinative. See Frazier v. Cupp, 394 U.S. 731, 739 (1969). The federal agents' misrepresentations did not make Carpenter's confession involuntary because he repeatedly denied any role in the murder of Hester after each of those misrepresentations. Only after federal agents gave Carpenter true details from Cassell's statement did Carpenter finally confess. The federal agents'

- 11 -

misrepresentations did not hinder Carpenter's capacity for self-determination and they did not affect the voluntariness of his confession.

Carpenter finally claims his confession was involuntary because the federal agents threatened to arrest his family; however, the federal agents did not threaten to arrest Carpenter's family members. The agents told Carpenter that if he did not tell the truth, they would subpoena members of his family to appear before the federal grand jury, and if they failed to appear or committed perjury they would be sent to jail. These statements are true and do not threaten to do anything illegal to Carpenter's family. Although the federal agents did say Carpenter's family would have to bear their expenses to appear before the grand jury, we conclude that under the totality of the circumstances this misrepresentation did not coerce Carpenter to confess. The district court did not err when it denied Carpenter's motion to suppress his confession because no Fifth Amendment or Due Process Clause violation occurred.

Accordingly, we affirm Breeden and Carpenter's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

- 12 -