Filed 12/30/14  In re D.P. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>D.P.,<br><br>     Defendant and Appellant. | A139184<br><br>(Alameda County<br>Super. Ct. No. SJ13020736) |

D.P. (Minor) appeals from a dispositional order entered in a proceeding under Welfare and Institutions Code section 602.  The juvenile court found true an allegation that Minor, then aged 16, had committed second degree robbery.  The court declared Minor a ward and committed him to Camp Sweeney.

Minor's sole claim on appeal is that statements he made to a police detective, as well as a letter he wrote at the detective's suggestion, should have been excluded because they were obtained in violation of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  We affirm because Minor has failed to provide an adequate record.  Even if Minor's claims had been properly presented, however, they would be meritless.

FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2012, two masked men robbed a liquor store in Palo Alto.  The store clerk could not see the face of either man but could see from the skin showing

1

through the eye holes of the masks that both men were African-American. After the clerk put money and liquor in the gunman's backpack, the two men fled.

On the evening of January 5, 2013, a Palo Alto woman reported to police that her vehicle had been carjacked. The car was later stopped on El Camino Real, and was occupied by Minor, Michael Holt, and Amador Rivera. The three were arrested and cell phones were seized from Minor and Rivera. Both phones were searched for their contents. Text messages from Rivera's phone showed that on the night of the liquor store robbery, Rivera and Minor were at Holt's house, a short distance from the liquor store. A review of the phone's pictures disclosed a photo of Rivera and Minor, who was wearing red shoes and a black Nike jacket and holding a bottle of vodka and cash. Surveillance video from the liquor store showed that the robber who entered first was wearing red shoes and a similar jacket. The vodka Minor was holding was the same brand ("X-rated") stolen from the liquor store. A search of Minor's cell phone yielded a photo of Minor holding a gun.

Based on this information, Palo Alto Police Detective Nicolas Martinez obtained search warrants for the Oakland home of Minor's father, where Minor lived, and the home of Minor's grandmother, with whom he also stayed. Detective Martinez arrested Minor at school on February 15, 2013, at 9:15 a.m. Minor was carrying a gray backpack similar to that carried by the first robber in the store's surveillance video.

Minor was taken from class, handcuffed, and placed in a police car, where he was advised of his *Miranda* rights. Martinez did not question Minor at that time but drove with Minor to the home of Minor's father. Minor waited in the car while Detective Cole Ghilarducci searched the residence. Ghilarducci found a pair of red Nike shoes and a black Nike jacket. Detective Martinez then drove Minor to the Palo Alto Police Department, arriving about 10:30 a.m.

Questioning began about 11:00 a.m. in the interview room and ended about 1:00 p.m. Detective Martinez gave Minor a bottle of water and offered Minor food before questioning. The first portion of the interview lasted until about 11:45 a.m., when Minor was given food from McDonald's. The lunch break lasted until 12:15 p.m., after which

2

questioning resumed.  The interview ended about a half hour later.  In total, Minor was questioned for about one hour.

During the initial questioning, Detective Martinez spent about 20 minutes asking Minor about his family.  At some point Martinez asked for an "explanation" of the robbery.  Minor responded, "I want to hear it from you first."  Martinez replied, "that's not the way this is gonna work."

Detective Martinez continued to question Minor.  After the detective told Minor that Rivera was in custody, there was a five-minute silence.  When Martinez asked if Minor would give a statement, the latter replied, " 'I honestly don't want to talk about this[.]' "  When the detective said he knew what happened that night but wanted to hear it from Minor, the latter said, "I don't want to talk about it."  Detective Martinez asked why he did not want to talk about it, and Minor replied, "[be]cause I don't."

About 10 minutes later, Detective Martinez asked who planned the robbery.  Minor twice said he "still [did not] want to talk about it[.]"  When the detective told Minor the judge could put him in "YA," Minor said, "I don't want to talk about it[.]"  Questioning was then suspended for lunch.  Minor was left alone in the unlocked room, unhandcuffed.

When questioning resumed after lunch, Detective Martinez asked Minor "what he had to say[.]"  Minor responded, "he wanted to see what [the detective] had first[.]"  Martinez again told Minor "that's not the way it worked," and the detective again talked about Minor's school and family.  Detective Martinez referred to Minor's Christmas vacation and asked whether Minor socialized with "Mike" during that period.  Minor answered that he could not remember.  When Detective Martinez asked whether they had gone to the liquor store, Minor said, "yes, we did[.]"  Asked for more details, Minor again said he did not want to talk about it.

Detective Martinez commented that it appeared to him that "two guys" went into the liquor store, robbed the place "at gun point," and "took off with money and alcohol[.]"  Minor said that "it had sounded funny to hear [him] say that," but insisted he was not the one who had robbed the liquor store.

3

After Martinez asked whether DNA samples found at the store would match him, Minor began to make incriminating statements. Minor admitted he had gone to the liquor store with Rivera on December 29, 2012. Minor insisted that the robbery was the "only one he did[.]" He said he drank some of the alcohol and sold some of it. At Detective Martinez's request, he wrote a letter of apology to the clerk of the liquor store.

A juvenile wardship petition (Welf. & Inst. Code, § 602) filed on February 19, 2013, in Santa Clara County Superior Court alleged Minor had committed second degree robbery. (Pen. Code, §§ 211-212.5, subd. (c)). On April 5, 2013, after a contested jurisdictional hearing, the juvenile court sustained the allegations of the petition. The court ordered the matter transferred to Alameda County for disposition.

At the contested disposition hearing on April 4, 2013, Minor's counsel challenged the admissibility of Minor's letter of apology and statements to Detective Martinez. Counsel argued the letter and statements were elicited in violation of *Miranda*. After hearing Detective Martinez's testimony regarding his interview with Minor and reviewing a compact disc containing an audio recording of the interview, the juvenile court denied Minor's request to suppress the statements. It concluded Minor's "statements provided were pursuant to properly issued *Miranda* warnings" and that "the statement was given freely and voluntarily without any indications of coercion" considering "the totality of the circumstances[.]"

On May 29, 2013, the juvenile court declared Minor a ward and ordered him placed in Camp Sweeney subject to various terms and conditions of probation. On July 10, 2013, Minor filed timely notice of appeal.

DISCUSSION

Minor contends the trial court should have suppressed his admissions to Detective Martinez and his letter of apology, because they were allegedly obtained in violation of his rights under *Miranda*. His argument has two parts. Minor first claims Martinez improperly continued to question him after he invoked his right to remain silent. Minor also contends that the circumstances under which the admissions were obtained violated the requirement that the confession be freely and voluntarily given. We reject these

4

arguments, because Minor has failed to provide us with a record adequate to demonstrate error.

I.    *The Record Is Inadequate to Demonstrate Prejudicial Error.*

The juvenile court admitted in evidence a compact disc containing an audio recording of Detective Martinez's interview with Minor. There was no transcript of the interview, and the court had no information about what transpired other than the CD and Martinez's testimony. In arguing Minor's admissions should be suppressed, defense counsel urged the juvenile court to listen to the CD and draw inferences about whether Minor's confession was truly voluntary. Counsel asked the court to "listen to the audio recording" which counsel characterized as "a very important piece of evidence" in deciding whether Minor's statements were admissible.

The juvenile court later explained it had "paid particular attention to the CD containing the interview of [M]inor that's the subject of the *Miranda* challenge posed by the defense." The court made clear its ruling on the *Miranda* issue was heavily dependent upon its review of the CD. Based "upon review of the information and the evidence[,]" the juvenile court was satisfied there had been no *Miranda* violation and that Minor's statement "was given freely and voluntarily without any indications of coercion[.]"

In this court, both Minor and the Attorney General agree we may conduct an independent review of the juvenile court's ruling because the evidence is undisputed. The Attorney General explains that "[w]here an interview is recorded, the facts surrounding the admission or confession are undisputed and this court applies independent review." This is certainly true in cases in which the record on appeal contains a recording of the interview. (See, e.g., *People v. Duff* (2014) 58 Cal.4th 527, 556 [Supreme Court itself reviewed transcript and videotape of defendant's interrogation].) In this case, however, while Minor's opening brief acknowledges the juvenile court listened to the CD containing the interview with Detective Martinez, the CD itself has not been transmitted to this court. (Cf. Cal. Rules of Court, rule 8.224 [procedure for transmitting exhibits to appellate court].)

As the party challenging the judgment, it is Minor's burden to show error. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 477-478, fn. 6.) In the absence of the recording of the interview—a recording upon which the juvenile court expressly relied—we must apply the presumption of correctness and affirm the order before us. (*Ibid*.) We cannot simply assume the missing exhibit would undermine the judgment. (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 292.) Because the record before us is insufficient to demonstrate prejudicial error, we are constrained to reject Minor's arguments.[1]

II.     *Minor's Claim that Detective Martinez Improperly Continued to Question Him After He Invoked His Right to Remain Silent Was Not Asserted Below.*

There is an additional reason we cannot reach Minor's contention that Detective Martinez should have ended the interview after Minor invoked his right to remain silent. This argument is not properly before us because it appears no such objection was raised below.[2] Before the juvenile court, Minor contended his incriminating statements should be suppressed *only* because they had not been voluntarily made. He did not argue Martinez should have discontinued the interview after he invoked his right to remain silent. The California Supreme Court has made clear that *Miranda*-based objections to the admissibility of statements must be specific. (*People v. Holt* (1997) 15 Cal.4th 619, 666-667 [Evid. Code, § 353 requirement of specific objection applies to *Miranda*-based objections].) *Miranda* claims not raised in the trial court may not be asserted on appeal. (*People v. Williams* (2010) 49 Cal.4th 405, 435 (*Williams*) [elements of *Miranda* claims not raised in trial court are forfeited on appeal].)

---

[1] Although the parties' briefs do not address the adequacy of the record, we may decide the issue without requesting further briefing. (See *People v. Neilson* (2007) 154 Cal.App.4th 1529, 1532-1534 (*Neilson*) [provision of adequate record on appeal is "a procedural and substantive requirement on the part of any party . . . asserting a position on appeal" and thus Gov. Code, § 68081 does not require briefing of issue of inadequate record].) We are not required to afford litigants the opportunity to address the issue of an inadequate record even when the lack of record is a ground for affirmance of the judgment. (*Neilson*, at p. 1534.)

[2] Minor's opening brief cites to nothing in the record indicating this objection was presented to the juvenile court.

6

III.    *Minor's Voluntariness Argument Is Not Meritorious.*

On the limited record before us, Minor's voluntariness argument is unavailing.  He argues that because of his age, the voluntariness of his confession must be given heightened scrutiny.  Although a juvenile's age, sophistication, experience with the criminal justice system are factors to be considered, and courts are especially careful in dealing with juvenile confessions, Minor's age alone did not render him incapable of making a voluntary confession.  (See, e.g., *People v. Lessie* (2010) 47 Cal.4th 1152, 1169 [16-year-old who was no longer in school capable of voluntarily waiving *Miranda* rights]; *People v. Lewis* (2001) 26 Cal.4th 334, 384 [13-year-old boy with paranoid schizophrenia gave voluntary confession]; *People v. Thomas* (2012) 211 Cal.App.4th 987, 1012-1013 [15-year-old murder suspect's confession held voluntary even though psychologist opined he was mildly mentally retarded and suffered from attention deficit and hyperactivity disorder].)  Minor was 16 years old at the time of the interview, and Detective Martinez repeatedly stated Minor's behavior, questions, and knowledge were more like those of an adult offender than a juvenile.  (See *People v. Nelson* (2012) 53 Cal.4th 367, 382 [noting 15-year-old defendant "appeared confident and mature"].)  Thus, contrary to Minor's contentions, there is nothing in the record to suggest that he "lacked the emotional capacity" to resist what he calls "Martinez'[s] sustained pressure and coercion."  (See *People v. Lessie, supra,* 47 Cal.4th at p. 1169.)

This leads us to Minor's claim that Detective Martinez obtained admissions from him through the use of promises, threats, and deception.  Coerced or involuntary confessions are those "obtained by physical or psychological coercion, by promises of leniency or benefit, or when the 'totality of the circumstances' indicates the confession was not a product of the defendant's 'free and rational choice.' " (*People v. Cahill* (1993) 5 Cal.4th 478, 482, fn. 1.)  "Coercive police activity is a necessary predicate but does not itself compel a finding that a resulting confession is involuntary." (*People v. Bradford* (1997) 14 Cal.4th 1005, 1041.)  In addition, the police misconduct and the challenged statement must be linked by proximate causation.  (*People v. Benson* (1990) 52 Cal.3d 754, 778.)

Minor claims Martinez implied he would be treated more leniently if he confessed. Noting it was Friday, Detective Martinez told Minor he could be released before Monday, but said, "it all depends on you[.]" Minor interprets this comment as a promise of early release in exchange for his confession. Such a brief statement, made at the very outset of questioning and well before Minor made any admission, does not qualify as an inducement. (See *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1236-1237 [detective's statement that he wanted record to show defendant's " 'degree of cooperation' " was too brief to be inducement and " 'convey[ed] no suggestion of any benefit in exchange for defendant's "cooperation" "].) There was no promise or threat, and the most that might be said is that the detective suggested it would be better for Minor to cooperate. This kind of advice does not render Minor's confession involuntary. (See *In re Shawn D.* (1993) 20 Cal.App.4th 200, 210 [advice or exhortation by police that it is better for accused to tell the truth does not make confession involuntary].)

Minor also argues Detective Martinez used deception to convince him to confess. Minor concedes, as he must, that the police are not prohibited from using deceptive tactics. (See *People v. Smith* (2007) 40 Cal.4th 483, 505 [citing cases].) Although Martinez falsely told Minor he had already talked to Rivera and Holt, such a ruse does not render Minor's confession involuntary. (*Frazier v. Cupp* (1969) 394 U.S. 731, 739 [officer falsely told suspect his accomplice had been captured and had confessed]; *People v. Jones* (1998) 17 Cal.4th 279, 299 [detective's implication that "he knew more than he did or could prove more than he could" was permissible and did not make confession involuntary].)

Finally, Minor contends Detective Martinez threatened him by saying the juvenile court would place him in the juvenile prison facility if he did not confess. To begin with, Minor makes this argument by citing to a portion of the reporter's transcript that reflects his trial counsel's interpretation of what Martinez told him. Martinez did not agree with that interpretation. In any event, a statement regarding the possible consequences of a defendant's conduct is not necessarily coercive. (See *People v. Jones, supra,* 17 Cal.4th at p. 298 [detective's statement to defendant that his answers could affect the rest of his

life was true and did not indicate coercion].)  And in this case, even if it were construed as coercive, it failed, for Minor responded to Detective Martinez's statement by saying he did not want to talk about it.  (See *Williams, supra,* 49 Cal.4th at p. 443 [references to death penalty and police deception did not overcome defendant's will because defendant exhibited no distress and "remained able to parry the officers' questions"].)

For all these reasons, the juvenile court did not err in concluding that Minor's confession was voluntary.

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.