[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11439
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-05791-JPB

ROGER SHANNON BROWN,

Petitioner-Appellant,

versus

WARDEN,
Phillips State Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 26, 2020)

Before NEWSOM, BRASHER and MARCUS, Circuit Judges.

PER CURIAM:

Rodger Brown, a Georgia prisoner, appeals the district court's denial of his

habeas corpus petition, under 28 U.S.C. § 2254, for its failure to rebut the

presumption of correctness given to the state court's habeas decision. Brown's petition arises out of his convictions and sentences for malice murder, felony murder, and four counts of aggravated assault for assaulting three individuals with a hammer and pry bar. On appeal, Brown argues that the Georgia Supreme Court's decision amounted to an unreasonable application of federal law because it declined to hold that, during his interview, the police violated his Fifth Amendment right to counsel by subjecting him to the functional equivalent of an interrogation after he clearly invoked his right to counsel. After thorough review, we affirm.

We review a district court's denial of a § 2254 habeas petition de novo. McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). Under § 2254(d), a federal court may not grant habeas relief on claims that were previously adjudicated in state court on the merits unless the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court holdings, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2). A state court's ruling is an unreasonable application of clearly established federal law if the ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. Burns v. Sec'y, Fla. Dep't of Corr., 720 F.3d 1296, 1304 (11th Cir. 2013).

2

The Supreme Court has long held that the Sixth Amendment right to counsel may attach during the investigatory phase of a criminal prosecution, prior to formal indictment. See Escobedo v. Illinois, 378 U.S. 478, 485 (1964). It explained in Miranda v. Arizona, that once warnings have been given, if the individual states that he wants an attorney, the interrogation must cease until an attorney is present. 384 U.S. 436, 473-74 (1966). The Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.

In Rhode Island v. Innis, the Supreme Court clarified that the interrogation environment encompassed questioning and its "functional equivalent," which it defined as "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980) (footnote omitted). The latter portion of this definition, it noted, focused primarily on the suspect's perceptions, rather than law enforcement's intent. Id.

Notably, "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns." Illinois v. Perkins, 496 U.S. 292, 297 (1990). On the one hand, Miranda's survey of interrogation practices, indicting the use of psychological

3

ploys -- such as positing the subject's guilt, minimizing "the moral seriousness of the offense," or blaming the victim or society -- were techniques of persuasion thought, in a custodial setting, to amount to interrogation. Innis, 446 U.S. at 299. On the other hand, the Supreme Court has found that a police officer's false statement that the accused's co-conspirator had confessed was not sufficient to render the defendant's subsequent confession involuntary, noting that the questioning was of short duration and the defendant had a normal level of intelligence. See Frazier v. Cupp, 394 U.S. 731, 737-39 (1969).

Here, the Georgia Supreme Court's decision rejecting Brown's Miranda claim -- which reversed the trial court's ruling on the motion to suppress and permitted Brown's statements to be used at trial -- did not amount to an unreasonable application of clearly established Supreme Court holdings. As we've explained, the Supreme Court has held that once a right to counsel is invoked, any interrogation must cease, and the question becomes whether the ensuing situation was the functional equivalent of an interrogation. See Innis, 446 U.S. at 301; Miranda, 384 U.S. at 473-74.

As the record reflects, Brown's interview began with him voluntarily discussing the crime, at which point Detective Geoffrey Ord interrupted Brown with questions about his age, education, and understanding of English. Brown then asked about the status of one of the victims, and after Detective Ord said the victim was in

4

the hospital, Brown kept describing the incident, but Detective Ord again interrupted Brown to read him his Miranda rights. Once Brown told Detective Ord he wanted a lawyer, Detective Ord did not question him about the incident.

Instead, Brown continued, on his own accord, to offer details of the crime, while Detective Ord repeatedly interrupted Brown, addressing Brown's concerns about how long he would be held, or whether he would be charged. Detective Ord then assisted Brown in getting his lawyer's card from Brown's wallet. At that point Brown again began to talk about the crime when Detective Ord said:

> What I like to do is keep that on hold until we contact your attorney. Cause what I want to do is you've been advised of your rights, you want an attorney and I can certainly appreciate that. We don't want to do anything to circumvent your rights. Ok. But what I don't want to do is get into a dialogue within which may constitute you divulging information that you didn't necessarily intend too. Ok. If that makes much s[ense] as possible we're doing this to protect your rights that's the only reason why we aren't telling you any more details about the case. Cause if I was to say something that someone else told us, it may illicit a response from you, alright. And you have asked for your attorney, so the best thing to have happened is for your attorney to be sitting here with you, and then you guys make a[n] educated decision together, how you want to pursue this. Ok.

Brown then raised questions about where he would be held and whether he was charged, which Detective Ord answered, and each time Brown asked about the victim, Detective Ord said that he "understood" or would try to arrange for Brown to visit him.

5

On this record, we cannot say that Detective Ord's statements come anywhere close to the tactics the Supreme Court has specifically identified as contributing to a custodial setting -- such as lying to the suspect about his alleged co-conspirator's confession or positing Brown's guilt -- and nothing from the transcript indicates that Brown construed them as coercive. See Innis, 446 U.S. at 301; Frazier, 394 U.S. at 737-39. Indeed, many of Detective Ord's statements were reasonably construed as deflections of Brown's questions or efforts to effectuate Brown's right to counsel and did not appear to contribute to any custodial interrogation setting at all.

As for Detective Ord's statement that the victim was hospitalized, it was made before Brown invoked his right to counsel. Moreover, once Brown invoked his right to counsel, Detective Ord never mentioned the victim's status again and, thus, the statement could not have served as a "psychological ploy" undermining his invoked right to counsel. See Miranda, 384 U.S. at 473-74. Accordingly, we conclude that the district court did not err in finding that the Georgia Supreme Court's decision rejecting Brown's Miranda claim was not an unreasonable application of clearly established Supreme Court holdings, and we affirm.

**AFFIRMED.**

6