Filed 4/3/24  P. v. Hosley CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B317584 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. TA147421 |
| JALEN TYRELL HOSLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed in part, vacated in part, and remanded.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

—————————————

A man drove through a Compton neighborhood and was shot dead. A jury convicted Jalen Tyrell Hosley of murder and found gang enhancements true.

Hosley contends insufficient evidence shows he was the shooter and ineffective assistance of counsel and prosecutorial misconduct compel reversal. He argues the trial court erred in admitting rap lyrics, and recent legislation concerning the admission of these lyrics and concerning gang enhancements requires vacating the enhancements and ordering a new trial.

We vacate Hosley's gang enhancement findings and the corresponding sentences, remand for further proceedings, and otherwise affirm. Undesignated statutory references are to the Penal Code.

I

We begin with an overview of the case, viewing the evidence favorably to the prosecution, which prevailed before the jury. Then, when discussing Hosley's insufficiency challenge, we examine the evidence more closely.

No one saw the shooting that killed Marquise Lawrence. It was in March 2015. Several neighbors and a trash collector testified about what they heard at the time and what they saw afterwards.

Police obtained surveillance video from a nearby home, which showed the suspect vehicle witnesses described: a blue SUV fleeing the murder scene. A nearby license plate reader identified just one possible suspect vehicle, which was the blue SUV Hosley drove.

Bullet evidence suggested the shooter fired on Lawrence from the driver side of an oncoming, taller vehicle.

2

Police talked to a member of the Acacia Blocc Crips gang, Chris Perkins, who associated with Hosley. On the stand, Perkins was a difficult witness who claimed not to remember some of what he originally reported to detectives, denied making certain statements to them, and maintained he just told them what they wanted to hear because he was in custody. The prosecution played Perkins' earlier recorded statements. There, Perkins admitted he was a few blocks from the shooting and had told a group of "homies" that a member of a rival gang was driving by. Someone went after the supposed rival in an "old school" SUV, and then Perkins heard shooting.

Detective Scott Lawler, the prosecution's gang expert, provided background on the Acacia Blocc Crips. He confirmed Perkins and Hosley were members, explained Acacia and Palmer Blocc are rivals, and showed this shooting occurred in territory claimed by Acacia. Lawler testified about the significance of "snitching," of protecting one's gang territory, and of driving through rival gang territory: "territory is everything for a gang" and a gang that lets rivals drive through its territory "would be seen as weak . . . a gang that can be exploited." Lawler explained gang members gain respect by committing violent acts in their neighborhood. He opined a gun murder like this one was for the benefit of a gang and the shooter.

A former girlfriend of another Acacia gang member testified about steps Hosley took after the shooting—and after seeing a wanted poster in the area—to change his appearance and to get rid of the SUV. This woman overheard Hosley discussing this with her boyfriend.

The trial included evidence of Hosley's background, including two Facebook pictures of him. One picture shows

3

Hosley's hand sign for the Acacia Blocc Crips; the other shows him holding his arm out front as if he were holding a gun. The jury also saw a notebook identifying Hosley's gang alliance. The notebook appears also to contain rap lyrics.

The prosecution's trial theory was Hosley shot Lawrence because he was egged on by a fellow gang member (Perkins) who mistakenly believed Lawrence was a rival entering his gang's territory. (Lawrence's girlfriend confirmed Lawrence was never a member of Palmer Blocc.) Gang members seek to establish themselves as someone to be feared, and Hosley was eager to make a name for himself and to elevate himself in his gang.

The defense did not call witnesses.

The jury convicted Hosley of first degree murder (§ 187, subd. (a)) and of shooting at an occupied vehicle (§ 246). The jury also found true a firearm allegation and gang allegations for both counts. Before trial, Hosley sought to strike and then bifurcate the gang allegations, but the trial court denied this relief after finding the gang evidence could "supply motive and intent" for the shooting, was "inextricably intertwined with the charged offense," and was relevant to witness credibility.

Hosley hired a lawyer who filed a motion for new trial asserting, among other things, that witness Perkins had not been sworn. The trial court denied the motion.

The court sentenced Hosley to 35 years to life in state prison, consisting of 25 years to life on the first count, plus 10 years for the gang enhancement. The court struck the punishment for the firearm allegation and stayed the punishment on the second count.

## II

On appeal, Hosley challenges the sufficiency of the evidence supporting his convictions. He maintains his trial counsel provided ineffective assistance by failing to object that Perkins was unsworn. He argues the prosecutor committed misconduct by referring, in her opening statement, to anticipated testimony of a witness who never ended up testifying, and his counsel provided ineffective assistance by failing to seek a mistrial on this basis. Hosley contends the admission of rap lyrics violated his rights and he should benefit from recently enacted laws concerning rap lyrics and gang enhancements, laws he says require vacating his enhancements and ordering a new trial.

We agree only with part of his latter contention. A limited remand is necessary. We reject Hosley's claim of cumulative error.

Hosley raised other issues in his opening brief concerning a jury note and his presence at a part of trial. We ordered the trial court and trial counsel to address these issues at a record correction hearing. After the November 2023 hearing, Hosley withdrew these arguments. We do not discuss them further.

## A

Hosley's insufficiency challenge concerns identity only. He claims nothing showed he was the shooter.

In reviewing claims of insufficiency of evidence, we examine the record in the light most favorable to the prosecution. We discern whether there is substantial evidence from which any rational trier of fact could reach the conclusion beyond a reasonable doubt. And we presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

5

We reverse only if it appears there is insufficient evidence to support the verdict under any hypothesis. (*Ibid.*) This is an enormous burden for a defendant to overcome on appeal. (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

Hosley did not meet this burden. Substantial evidence supports the jury verdict that he shot Lawrence to death.

Lawrence died at the corner of Willowbrook Avenue and Johnson Street in Compton. This residential area has narrow streets and one-story homes. Just west of this corner, the east-west Johnson Street makes a right-angle turn north and becomes Acacia Avenue.

Video from a home surveillance system about one block from the shooting site shows the victim Lawrence at 4:59 p.m. driving in a tan sedan on Acacia Avenue, toward the crime scene. The sun brightly illuminates the scene; dusk is hours away. Shortly thereafter, the video shows a blue SUV Chevrolet Tahoe driving in the opposite direction on Acacia Avenue, away from the crime scene. Only a single other car passes by on the video—going in Lawrence's direction, well behind Lawrence—and there are no pedestrians or other people to be seen. This street thus is largely deserted at the time of the murder.

Neighbors heard several shots and saw a bluish SUV driving away from the fatal corner heading west on Johnson toward where that street turns and becomes Acacia Avenue, in the direction of the aforementioned camera system. All the neighbors' eyes were drawn to this one departing vehicle. (Lawrence's car crashed into a wall when the head shot caused his rapid death.) Several neighbors saw a lone man—the driver—in the fleeing SUV.

6

One neighbor phoned 911 at 5:01 p.m. to report a "drive-by at my house." She said the departing vehicle was "[l]ike a 1997 Suburban," blue in color, driven by a Black male, a "big guy" at least 250 to 300 pounds, with an "afro" hair style about two to three inches long. Hosley concedes he matched this description. The reporting neighbor said the suspect SUV had turned off Willowbrook and traveled west on Johnson Street, in the direction of the camera system. Another neighbor described the car as a blue " '98, '99 Chevy or GMC. I'm not sure if it was a Tahoe or a Yukon." This neighbor saw this SUV "taking off" from the murder scene.

The police linked the shooter's vehicle to Hosley. A camera six blocks away photographed a blue Chevrolet Tahoe shortly after the murder. This was the only vehicle identified from the relevant time period that matched the witness descriptions. The license plate connected this Tahoe to Jalen Hosley's mother: Tiffany Hosley. The Tahoe was registered to her. Police records showed an officer named Juan Torres had ticketed Jalen Hosley while he was driving this 1997 blue Tahoe on Willowbrook Avenue in December 2014, a few months before the shooting. During these events, Hosley was 17 years old, so a jury reasonably could have concluded it made sense he drove his mother's car.

The prosecution established Hosley's motive. Hosley is a member of the Acacia Blocc Crips, which at the time was in a shooting war with a rival gang called Palmer Blocc. Fellow Acacia member Perkins told police he was about three blocks away just before the murder when his group saw someone in a tan car driving on Acacia Avenue. Perkins and Hosley had been seen together before.

7

Perkins and his group were discussing the Palmer gang and had information someone from Palmer was coming by when Perkins said, " 'Damn, there's goes motherfucker right there' "— driving in Acacia territory. Perkins thought the driver looked like "Little D" from the Palmer gang. He saw "[l]ike a old school Suburban" go after him. Then he heard some shooting. Perkins later confirmed the shooter was in a blue Tahoe. Perkins went by Lawrence's crashed tan car afterwards and realized the dead man was not Little D after all.

Lawrence had been shot in a case of mistaken identity. Perkins refused, however, to name the person who had been driving the SUV and, by inference, the shooter. He refused to identify who he was with before the shooting. He did not explain how the shooter so swiftly had learned about a supposed Palmer driver in Acacia territory.

A woman had been dating someone from the Acacia Blocc Crips gang identified only as Tyler. The woman testified she heard Hosley and Tyler discussing a wanted poster about Hosley. This woman said "[i]t was a wanted poster of Jalen" posted at a gas station near the crime scene. Tyler told Hosley he should cut his hair; Hosley responded he had already done it. The woman said Hosley had worn an afro grown out two or three inches but cut or shaved it after the wanted poster came out. Regarding the car, Tyler suggested Hosley "get rid of it." Hosley responded he did not have it anymore. DMV records showed Hosley's mother sold the car.

Crediting the evidence favoring the verdict and drawing reasonable inferences to support the judgment, Hosley's substantial evidence challenge fails. The jury reasonably could infer Hosley was the Acacia member Perkins egged on but would

8

not name, and Hosley took actions after the murder showing his consciousness of guilt.  This verdict was rational.  (See *People v. Navarro* (2021) 12 Cal.5th 285, 307 (*Navarro*) ["We ask not whether the jury's judgment was the most probable interpretation of the evidence, but simply whether it was a rational one"].)

B

Hosley claims his trial counsel provided ineffective assistance in failing to object that Perkins had not been sworn.

A defendant claiming ineffective assistance of counsel must show deficient performance by counsel that prejudiced the defense.  (See *People v. Johnsen* (2021) 10 Cal.5th 1116, 1165 (*Johnsen*).)  On direct appeal, we find deficient performance only if (1) the record shows counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) no satisfactory explanation could exist.  (*Ibid.*)  We defer to counsel's reasonable tactical decisions and presume counsel acted within the wide range of reasonable professional assistance.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

To understand Hosley's ineffective assistance of counsel claim, some background is necessary.

Before Perkins took the stand and outside the jury's presence, the trial court told Perkins he would be called to take an oath and he must promise to tell the truth.  Perkins announced that he had been lying all his life and that his counsel said telling the truth was optional.  The court instructed him not to reveal his communications with counsel.  Then counsel weighed in.  Later, when the court tried to administer the oath

9

and asked Perkins if he would tell the truth, Perkins answered "No." They continued:

> "The Court: You aren't going to tell the truth?
>
> "Chris Perkins: You said to tell the truth? Tell the truth about this?
>
> "The Court: I want you to tell the truth about any question they ask you.
>
> "Chris Perkins: Yeah.
>
> "The Court: Okay. Go have a seat."

The court announced, without objection, that it would "indicate for the record Mr. Perkins has been sworn when the jurors come in." When the jurors entered the courtroom, the court told them Perkins "was already administered the oath."

Allowing Perkins to testify without objecting was rational. Hosley cites no rule or law requiring any particular form for a witness oath. His cited rules contain no such requirement. (See § 118; Code Civ. Proc., § 2094; Evid. Code, § 710.)

Hosley's counsel rationally could have determined the court's instruction and Perkins's ultimate response sufficed.

The trial court reached this conclusion. It explained, in denying Hosley's new trial motion, that a witness oath need not be done before a jury, there are no "magic words" that must be used for administering an oath, the court's question and Perkins's verbal response were sufficient, and Perkins's "demeanor," "facial expression" and "body language" reflected he "clearly understood" what was being asked. (See Code Civ. Proc., § 2094, subd. (b) ["the court may administer an oath . . . in a manner that is calculated to awaken the person's conscience and impress the person's mind with the duty to tell the truth. The court shall

satisfy itself that the person testifying understands that his or her testimony is being given under penalty of perjury"].)

Hosley relies heavily on *Griffin v. Harrington* (9th Cir. 2013) 727 F.3d 940 in arguing his counsel provided ineffective assistance, but that case is not like Hosley's. *Griffin* is a habeas case where the witness refused to take the oath *and was not asked again or instructed further*, and where nothing suggested he entertained changing his mind to speak truthfully. (*Id.* at pp. 942–943 & 945.) Defense counsel later recognized there was no sworn testimony and acknowledged his mistake in not objecting. (*Id.* at pp. 943, 945 & 946.) The consequences of failing to object there were enormous, as that witness had identified the defendant as the killer in his earlier recorded statement, counsel knew the witness likely would recant the statement, and this statement was the only evidence showing the defendant was the shooter. (*Id.* at pp. 943, 946 & 948.) *Griffin* does not demonstrate there was ineffective assistance of counsel here.

Hosley acknowledges Perkins's testimony was helpful to him—Perkins denied telling Hosley to shoot anyone and maintained he had no idea who shot the victim—while Perkins's earlier recorded statements were "convoluted and ambiguous."

In short, defense counsel may have determined that objecting here was pointless, unnecessary, or unwise. The choice not to object was reasonable. (See *Mai*, *supra*, 57 Cal.4th at p. 1018 [whether objections should be made is within counsel's discretion and rarely implicates ineffective assistance of counsel].)

Because Hosley has not established deficient performance by his trial counsel, we need not reach the issue of prejudice.

## C

Hosley next claims the prosecutor committed misconduct and deprived him of constitutional rights by summarizing anticipated witness testimony that was highly incriminating yet never uttered to the jury.

During her opening statement, the prosecutor said the jury would hear from another Acacia Blocc Crip, Michael Barnes, about Hosley confessing he killed an innocent man because Perkins told him the guy was a rival, and about Perkins admitting he " 'told him to go get him and he got him.' " Later, outside the jury's presence, the trial court ordered Barnes to take the oath and to answer the attorneys' questions, but Barnes refused and the court initiated contempt proceedings. Defense counsel did not move for a mistrial.

Hosley forfeited this issue by failing to raise it at trial. (See *Johnsen, supra,* 10 Cal.5th at pp. 1164–1165 [timely and specific objection required to preserve claims of prosecutorial misconduct].) Hosley's opening brief concedes objecting is required to preserve a misconduct claim yet does not argue objecting or admonishing the jury would have been ineffectual here. He suggests we should excuse any forfeiture because the misconduct here resulted in a miscarriage of justice. Hosley's citations show this is no exception to the objection requirement. (See *Navarro, supra*, 12 Cal.5th at p. 334; *People v. Green* (1980) 27 Cal.3d 1, 28–35.)

Hosley argues the trial court nevertheless should have declared a mistrial on its own. He cites section 1044 in support of this argument, which imposes no such duty. Case law confirms the lack of duty. (See *People v. Carrera* (1989) 49 Cal.3d 291, 321 ["a trial court has no sua sponte duty to control prosecutorial

misconduct . . . . that a case is close does not in and of itself excuse the failure to object or impose a duty on the trial court to intervene in the absence of objection"].)

Grasping the court's lack of duty and the forfeiture here, Hosley claims his trial counsel provided ineffective assistance in not seeking a mistrial.

But counsel's conduct was rational, given the prosecutor's opening remarks about Barnes were brief, Barnes was not called to the witness stand before the jury, and neither counsel returned to him in closing arguments. Further, the trial court instructed the jury that opening statements are not evidence, an opening statement is simply an outline of what counsel expects the evidence will show at trial, and the verdict must be based solely on the trial evidence. *Frazier v. Cupp* (1969) 394 U.S. 731, 733–736, cited by Hosley, shows limiting instructions like these are sufficient and any error here did not amount to a constitutional violation.

Hosley repeatedly maintains the challenged remarks concerned confessions, the most damaging evidence, which necessitates a new trial. But this case is not like the ones Hosley emphasizes. In *Arizona v. Fulminante* (1991) 499 U.S. 279, 283–284 & 287, the trial court admitted the defendant's coerced confession at trial. And in *Douglas v. Alabama* (1965) 380 U.S. 415, 416–419, the prosecution brought a codefendant to the stand and read his signed confession implicating the defendant under the guise of cross examination, despite the codefendant's refusal to answer any questions.

Defense counsel here might have decided no new trial would be more favorable to Hosley. Barnes, after all, might

13

decide to testify in a future trial. Not seeking a mistrial thus would be a rational tactical choice.

Counsel also reasonably could have concluded the prosecutor made her opening remarks about Barnes in good faith. (See *Navarro*, *supra*, 12 Cal.5th at p. 317.) It is true Barnes announced multiple times before trial that he was not a prosecution witness and no one had spoken to him. But the prosecutor responded that she needed the detectives present to speak with Barnes, and the court explained it was typical to have a witness present in these circumstances and they also needed to appoint counsel for Barnes. Other comments by the prosecutor signaled she believed Barnes would testify. The prosecutor conceded some of her witnesses were difficult and "no one testifies on gang defendants willingly." But this does not show she knew Barnes would not testify until he refused. Perkins, another difficult witness, did testify.

This trial lacked the earmarks of prosecutorial misconduct: deceptive or reprehensible methods to persuade the trier of fact, or conduct infecting the trial with extreme unfairness. (See *Navarro*, *supra*, 12 Cal.5th at p. 332.) Hosley has failed to establish his counsel's performance was deficient.

### D

Hosley's next two contentions concern Assembly Bill No. 333 (2021-2022 Reg. Sess) (Stats. 2021, ch. 699) (AB 333), which became effective on January 1, 2022, several years after the jury convicted Hosley. (See *People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)

AB 333 did two key things. First, it altered the elements of the section 186.22 gang enhancement and made the standards for applying these enhancements more rigorous. (*Tran*, *supra*, 13

14

Cal.5th at p. 1206; *People v. Cooper* (2023) 14 Cal.5th 735, 744–745.) Second, it added section 1109, which, on defense request, requires a gang enhancement charge to be tried separately from the substantive offenses. (See *Tran, supra,* 13 Cal.5th at p. 1206.)

On the first issue, the prosecution concedes the changes to section 186.22 apply retroactively to Hosley. The prosecution further concedes the matter should be remanded for "possible" retrial of the gang enhancements. We agree. This trial did not establish the new statutory requirements of section 186.22.

On the second issue, Hosley argues new section 1109 entitles him to a new trial. The parties, and California appellate courts, are split on whether the new bifurcation provision applies retroactively. (See *Tran, supra,* 13 Cal.5th at p. 1208.) We need not take sides because we conclude failing to bifurcate the gang allegations did not prejudice Hosley.

The trial court allowed the prosecution to present limited gang evidence to advance its theory that Hosley killed because he mistook Lawrence for a gang rival driving through Acacia territory. Most of the gang evidence would have remained central to this case, and would have been admissible in a bifurcated trial, because it established Hosley's motive and intent for an otherwise-puzzling killing. (See *Tran, supra,* 13 Cal.5th at p. 1208 [even if not admitted to prove a gang enhancement, gang evidence may be relevant and admissible to prove other facts related to a crime].) The prosecution's theory required it to explain about Hosley's identity as a gang member, about his gang's rivals, and about his connection with fellow gang members.

Hosley's counsel acknowledged pretrial that the prosecution could use gang evidence to show the motive and intent for the shooting. This defense concession was logical and significant, but the gang evidence was even more sweeping in import than this concession admitted. The gang evidence went to witness credibility and explained Perkins's and others' reluctance on the stand and with police. Our Supreme Court has recognized many possible uses of gang evidence. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 ["Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime"].)

The trial court was attuned to the prejudicial nature of certain gang evidence and took steps to limit undue prejudice. Hosley does not argue the gang evidence at trial was cumulative. This evidence was not particularly inflammatory: there was no gore or graphic violence. And the court instructed jurors on the limited relevance of the gang evidence, warning they could not conclude from this evidence that Hosley was a person of bad character or was disposed to commit crime. Presumably the jury obeyed this instruction. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

Hosley fails to pinpoint any evidence he thinks was admitted only because of the gang enhancements. Possibly evidence that other members of the Acacia Blocc Crips (who were not trial witnesses) committed certain other offenses would have been unnecessary in a bifurcated trial. But this evidence was not

16

extensive. It comprised but a few pages of trial testimony and a small number of exhibits of certified records.

The gang evidence did not render this trial fundamentally unfair. Hosley has not established a reasonable probability of obtaining a more favorable result with a bifurcated trial. (See *Tran*, *supra*, 13 Cal.5th at pp. 1209–1210 [applying the *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) harmlessness standard]; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1131 [same].)

E

In a short section at the end of his lengthy opening brief, Hosley claims the admission of handwritten rap lyrics violated another new law—Assembly Bill No. 2799 (2021-2022 Reg. Sess) (Stats. 2022, ch. 973), codified as Evidence Code section 352.2— as well as his rights to due process and a fair trial.

Recently enacted Evidence Code section 352.2 requires trial judges in criminal cases to consider certain factors before admitting forms of creative expression, including rap lyrics, as evidence. It aims to avoid injecting racial bias and improper consideration of criminal propensity in criminal proceedings. (*People v. Venable* (2023) 88 Cal.App.5th 445, 448, review granted May 17, 2023, S279081 (*Venable*).)

The rap lyrics here were in a notebook that made a brief appearance at trial. A deputy testified about serving a search warrant at a home he believed was Hosley's. The deputy found a briefcase there containing a notebook, and he confirmed Exhibit 64 was an envelope containing that notebook. The notebook had Hosley's first name (Jayman) inside and mentioned "ATF," "ATF Crip" and "Acacia," among other things. Gang expert Lawler explained Hosley's gang (Acacia Blocc Crips) was aligned with

17

two others (Spook Town and Farm Dog Crips), and the alliance was called "ATF." The prosecutor briefly asked Lawler about a few words from a few pages of the notebook, including "catching fades" (fighting), "troopin wit the foety" (hanging out), and "pop ya" (shoot). Defense counsel later asked Lawler whether Hosley's gang moniker was in the notebook (it was not).

Defense counsel earlier had objected to the notebook as late discovery and on authentication and Evidence Code section 352 grounds. The court said it was not going to "let all of it in." The parties would photocopy certain pages and compile them into a separate exhibit for the jury. But after the parties rested, the court appeared to receive Exhibit 64 into evidence without any objection. The court conceded as much at the record correction hearing.

Hosley argues that admitting the lyrics into evidence amounted to a due process violation because it was unknown who authored them. But the prosecution sufficiently authenticated the notebook as Hosley's. It established the notebook was found where Hosley lived, bore Hosley's name, and referred to Hosley's gang. (See Evid. Code, § 1421; see also *People v. Goldsmith* (2014) 59 Cal.4th 258, 268 [proponent of a writing may rely on the writing's content or on circumstantial evidence to authenticate it].)

Regarding the new law, Hosley does little more than provide background on the law and describe its text. He notes the lyrics here were not similar to the charged crime, implying this law would render the lyrics inadmissible. The prosecution counters that the new law operates prospectively only.

Courts have divided over whether Evidence Code section 352.2 is retroactive. (Compare *Venable*, *supra*, 88 Cal.App.5th at

18

pp. 448 & 456, review granted May 17, 2023, S279081 [the provision is ameliorative and applies retroactively to cases pending on appeal] with *People v. Ramos* (2023) 90 Cal.App.5th 578, 592–596, review granted July 12, 2023, S280073 [the provision "is not a statute that creates the possibility of *lesser punishment* or any other type of more lenient treatment" or "that *reduces criminal liability*, such as by altering the substantive requirements for a conviction or expanding a defense" and therefore is not retroactive] and *People v. Slaton* (2023) 95 Cal.App.5th 363, 372–376, review granted November 15, 2023, S282047 [the provision is a neutral evidentiary rule that applies prospectively only; applying it retroactively would be inconsistent with precedent].)  We agree with the thorough reasoning in the later decisions finding the new law to be prospective only and incorporate that reasoning here.

Assuming this law is retroactive and the trial court erroneously admitted the rap lyrics, Hosley's challenge falls short because he has not established prejudice.

Hosley's entire argument on prejudice in his opening brief is this:  "Appellant was severely prejudiced by the admission of the rap lyrics because it was no more than bad character evidence.  The court abused its discretion under section 352 when it admitted them, in violation of appellant's due process rights. (*People v. Partida* (2005) 37 Cal.4th 428, 435.)  The prosecution cannot prove that the failure to bifurcate was harmless beyond a reasonable doubt.  (*Chapman v. California*, 386 U.S. at p. 24.) Appellant is entitled to a new trial."

Hosley assumes the *Chapman* standard applies based on *People v. Partida* (2005) 37 Cal.4th 428.  That case recognizes the erroneous admission of gang evidence can rise to the level of a

due process violation "only if it renders the trial fundamentally unfair." (*Id.* at p. 432.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test." (*Id.* at p. 439.) This notebook did not poison Hosley's trial. The presentation of this evidence was brief and tangential. We therefore apply *Watson*'s harmlessness standard and conclude Hosley failed to show a reasonable probability of obtaining a more favorable result if the rap lyrics had been excluded.

In connection with the trial court's record correction hearing and after submitting his reply brief, Hosley had several opportunities to explain why these lyrics mattered in this trial, yet he never engaged the lyrics. Hosley conceded most of his notebook was "essentially meaningless." The only thing Hosley added on the issue of prejudice was that the evidence against him was weak and the jury initially was unable to reach a verdict, so "the admission of colorful rap lyrics that appeared to glorify violence, but were completely irrelevant" was not harmless error.

This does not show prejudice. The lyrics here were not lengthy. They were cryptic, not inflammatory. Counsel questioned only one witness about them. The jury saw no graphic music video, as in *Venable, supra,* 88 Cal.App.5th at pp. 452–455, review granted. Also unlike that case, the prosecutor here placed no special emphasis on the lyrics. (See *id.* at pp. 456 & 458.) She did not mention the notebook writings in her closing and rebuttal arguments, and defense counsel only mentioned them in passing as "a little verse, a rap verse" with no apparent relevance. The trial court's instruction on the limited relevance of gang evidence encompassed the rap lyrics and told jurors they could not consider this to be evidence of Hosley's bad character or

20

propensity to commit crime.  The rap lyrics were not the sole, or a major, source of gang evidence.  The notebook contents were probative to pass the low bar of relevance but were not a significant focus in this murder trial.

Assuming the trial court erred in admitting rap lyrics, then, the error was harmless.

F

Hosley urges us to find cumulative error, arguing the combined effect of the missteps here violated his constitutional rights, denied him a fair trial, and requires reversal.  Hosley has demonstrated neither multiple trial errors nor an unfair trial.

Even assuming without deciding it was error to admit the rap lyrics and not to bifurcate the gang enhancements, these assumed errors were harmless and viewed together do not amount to prejudicial error requiring reversal.  (See *People v. Poletti* (2015) 240 Cal.App.4th 1191, 1216–1217 [appellate court reverses a judgment under the cumulative error doctrine if there is a reasonable possibility the jury would have reached a more favorable result absent a combination of errors].)

//
//
//
//
//
//
//
//
//
//
//

21

## DISPOSITION

We reverse the true findings on the gang enhancements and vacate the corresponding sentences for these enhancements (10 years on each count).  We remand for the trial court to provide the prosecution an opportunity to retry the gang allegations under the amended section 186.22.  In all other respects, we affirm the judgment.


                                        WILEY, J.


We concur:


        GRIMES, Acting P. J.



        VIRAMONTES, J.


22